RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0184p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CHARLES GOODELL,

     *Petitioner-Appellee,*

   *v.*

JESSE WILLIAMS, Warden,

     *Respondent-Appellant.*

No. 09-4338

_____

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 08-02479—James S. Gwin, District Judge.

Argued: June 10, 2011

Decided and Filed: July 11, 2011

Before: COLE, McKEAGUE, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Elizabeth A. Matune, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Katherine A. Szudy, OHIO PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellee. **ON BRIEF:** Elizabeth A. Matune, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Katherine A. Szudy, OHIO PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellee.

_____

## OPINION

_____

McKEAGUE, Circuit Judge. Warden Jesse Williams appeals from an order of the district court conditionally granting habeas relief to petitioner Charles Goodell. The district court determined that the process by which Goodell was resentenced in the Lucas County (Ohio) Court of Common Pleas, resulting in a sentence longer than the original sentence he had successfully challenged, gave rise to a presumption of vindictiveness.

1

Finding that the presumption was not rebutted by the Warden, the district court ruled that Goodell's resentencing violated his due process rights. Further, the court held the Ohio Court of Appeals' contrary ruling was contrary to clearly established federal law. We conclude that the circumstances of Goodell's resentencing do not give rise to a presumption of vindictiveness, that even if such a presumption applied, it was rebutted, and that, in any event, the Ohio Court of Appeals' adjudication of these issues was neither contrary to nor an unreasonable application of clearly established federal law. For the reasons that follow, the district court's ruling is reversed.

## I

On April 9, 2002, petitioner Goodell was found guilty in the Lucas County Court of Common Pleas of one count of rape, two counts of aggravated burglary, and two counts of felonious assault—all offenses having been committed during two separate incidents on October 31, 2000. The trial proofs showed that Goodell was one of three men hired by a Toledo landlord to use force to collect overdue rent payment from particular tenants, a family of four. The defendants performed their work with zeal. Forcing their way into the tenants' apartment in the early morning hours, they beat the father of the family to the point that he needed medical treatment at a local hospital. Within hours, after he returned from the hospital, the defendants returned to continue their assault. When the father escaped through the bathroom window, two of the defendants pursued him. Defendant Goodell, however, stayed behind and sexually assaulted his wife. Goodell's co-defendants cooperated with the prosecution. In the ensuing jury trial, Goodell did not testify and was found guilty as charged.

The day after the jury returned its verdict, the trial court, Honorable Judith Ann Lanzinger, sentenced Goodell—without the benefit of a presentence report—to a prison term of five years for the rape conviction and four years for each of the other offenses. The four-year sentences were to run concurrently with each other but consecutively to the five-year sentence, yielding a total prison sentence of nine years. On October 29, 2004, the Ohio Court of Appeals reversed this sentence, concluding that Judge Lanzinger had not adequately justified the imposition of consecutive sentences by making the

findings required by state law. *State v. Goodell*, No. L-02-1133, 2004 WL 2426238 (Ohio App. 6 Dist. Oct. 29, 2004).

On remand to Lucas County, Goodell's resentencing was conducted by a different judge, Honorable Gary G. Cook. Judge Cook understood that he was to conduct a plenary resentencing. He ordered the preparation of a presentence report and reviewed the entire trial transcript. The resentencing hearing was conducted on June 23, 2005. Judge Cook determined that the original sentence imposed by Judge Lanzinger was "woefully inadequate" considering the factual circumstances of the case and the defendant's background. Judge Cook imposed a prison sentence of seven years for the rape, four years each for the first burglary and assault, and five years each for the second burglary and assault. Judge Cook ruled that the two four-year sentences for the first burglary and assault would run concurrently with each other, as would the two five-year sentences for the latter burglary and assault. However, he ruled that the combined four-year sentence would run consecutive to the combined five-year sentence and consecutive to the seven-year sentence, yielding a total prison term of sixteen years.

In response to defendant's argument that imposition of this substantially harsher sentence, after he had successfully appealed his original sentence, smacked of vindictiveness, Judge Cook took pains to explain his rationale. First, Judge Cook made note of Goodell's extensive criminal history, including two felony convictions and twenty-four misdemeanor convictions, of which Judge Lanzinger had not been fully aware, and which reflected disrespect for the law, even an attitude of lawlessness. Judge Cook acknowledged that, after reading the trial record "several times" and reviewing the circumstances of Goodell's offenses, he had gotten "whipped up" about it—but he deemed this reaction entirely natural and appropriate because this was a "heinous crime." Judge Cook denied that he harbored any vindictiveness, explaining that he was sentencing Goodell only because directed to do so by the Ohio Court of Appeals, which was not satisfied with Judge Lanzinger's explanation of the original sentence.

Further, Judge Cook justified his decision to impose consecutive sentences by explaining that there were actually three distinct sets of crimes here—the first burglary

and assault, the second burglary and assault, and the sexual assault—and each set of crimes involved a separate animus.  Addressing the relevant factors under Ohio law, Judge Cook explained that consecutive sentences were needed to protect the public from future crimes and punish the offender; that the nature of the offenses was such as to cause harm so great or unusual that no single sentence would adequately reflect the seriousness of defendant's conduct; and that defendant's extensive criminal history demonstrated the need for consecutive sentences.

Defendant appealed this sentence, too, and again he obtained relief.  On June 30, 2006, the Ohio Court of Appeals ruled that the sentencing court had exceeded its authority.  *State v. Goodell*, No. L-05-1262, 2006 WL 2242893 (Ohio App. 6 Dist. June 30, 2006).  The appellate court ruled that it had vacated only a portion of the original sentence; that the terms of incarceration imposed in the original sentence were *res judicata* or "law of the case;" and that Judge Cook was not authorized to conduct a de novo resentencing, but was constrained to address only the question of whether and how the sentences would run concurrently and/or consecutively.  The Court of Appeals thus vacated the sixteen-year sentence and remanded.

Judge Cook undertook the second resentencing on December 19, 2006.  He recognized that the Court of Appeals had not ordered that the original sentence be reimposed, but that he was to abide by the terms of incarceration originally imposed by Judge Lanzinger.  Consistent with that direction and with his own earlier assessment that three distinct sets of crimes had been committed, Judge Cook ruled that the four-year combined sentence for the first burglary and assault would run consecutively to the four-year combined sentence for the second burglary and assault, and both four-year terms would run consecutively to the five-year sentence for the sexual assault.  This resulted in a total prison sentence of thirteen years.

Goodell appealed again, but the Ohio Court of Appeals affirmed.  *State v. Goodell*, No. L-07-1016, 2007 WL 2874334 (Ohio App. 6 Dist. Sept. 28, 2007).  The appellate court rejected Goodell's argument that the harsher sentence that resulted after his successful appeals was presumptively vindictive.  The court further found no

evidence of vindictive motive on the part of the sentencing judge.  The Ohio Supreme Court refused to accept the appeal for review.

Having thus exhausted his claim of vindictiveness in the state courts, Goodell filed the instant habeas petition in the Northern District of Ohio on October 10, 2008. The matter was referred to a magistrate judge, who issued a report and recommendation concluding that the Ohio Court of Appeals' holding that Goodell's thirteen-year sentence had not been shown to be presumptively or actually vindictive was not objectively unreasonable.  The magistrate judge thus recommended the petition be denied.  Goodell objected.  On September 29, 2009, the district court issued its opinion, declining to adopt the report and recommendation.  *Goodell v. Williams*, 676 F.Supp.2d 640 (N.D. Ohio 2009).  The district court held that the circumstances of Goodell's resentencings gave rise to a presumption of vindictiveness that had not been rebutted by the Warden and that the Ohio Court of Appeals' contrary ruling was contrary to clearly established federal law.  The district court ordered that the writ be "conditionally granted," but did not identify the "condition."  The Warden timely appealed.[1]

## II

### A.  AEDPA Review

We review the district court's legal conclusions and rulings on mixed questions of law and fact de novo, and we review its factual findings for clear error.  *Boykin v. Webb*, 541 F.3d 638, 642 (6th Cir. 2008).  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the federal courts may not grant habeas relief on any claim that was adjudicated on the merits in the state courts unless the adjudication resulted in a decision that:  (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) was based on an

---

[1]Since the notice of appeal was filed, both the district court and this court have denied the Warden's motions to stay the district court's ruling.  As a consequence, Goodell was released from the custody of the Ohio Department of Rehabilitation and Correction on October 8, 2010, as though his prison sentence were governed by the original sentence imposed by Judge Lanzinger—even though the habeas writ did not actually issue.  Because Goodell was incarcerated at the time his petition was filed and is presently subject to parole supervision, the "in-custody" requirement for relief in habeas remains satisfied and the issues presented by this appeal have not been mooted.  *See Akrawi v. Booker*, 572 F.3d 252, 255 n.1 (6th Cir. 2009).

unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

Under the "unreasonable application" clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case. *Id.* Yet, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, to warrant habeas relief, the application must be found to be "objectively unreasonable." *Id.* at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

In determining whether a state court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, a federal court may look only to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *Williams*, 529 U.S. at 412. The "clearly established federal law" is "the governing legal principle or principles set forth by the Supreme Court." *Lockyer*, 538 U.S. at 71-72. "[T]he 'lack of an explicit statement' of a particular rule by the Supreme Court 'is not determinative' of clearly established law, since 'the Court has made clear that its relevant precedents include not only bright-line rules but also the legal principles and standards flowing from precedent.'" *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005) (quoting *Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)). The court may also look to lower courts of appeals' decisions to the extent they illuminate the analysis of Supreme Court holdings in determining whether a legal principle had been clearly

established by the Supreme Court.  *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010).

### B.  State Court Ruling

Here, the relevant state-court decision is the September 29, 2007 Ohio Court of Appeals ruling that Goodell had not made the requisite showing of vindictiveness to warrant relief.  *State v. Goodell*, 2007 WL 2874334.  In reaching its decision, the appellate court correctly identified two important Supreme Court decisions, *North Carolina v. Pearce*, 395 U.S. 711 (1969), and *Texas v. McCullough*, 475 U.S. 134 (1986).  In *Pearce*, the Court recognized that where a defendant has successfully challenged his conviction and then is convicted again on retrial, due process is violated if the sentence imposed on resentencing is influenced by vindictiveness on the part of the sentencing court.  395 U.S. at 725.  Recognizing that retaliatory motivation could be difficult to prove, the Court held that whenever a more severe sentence is imposed on resentencing, the reasons, based on objective information, must affirmatively appear in the record.  *Id.* at 726.  Because no record of such reasons had been made in the two cases then before it, the *Pearce* Court upheld the award of habeas relief in both cases.  Although the notion of a "presumption" appears nowhere in the *Pearce* opinion, the ruling has since been read to apply "a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." *United States v. Goodwin*, 457 U.S. 368, 374 (1982) (applying the presumption but finding it rebutted by the sentencing court's careful explanation of reasons for imposing a greater sentence).

In *McCullough*, the Court revisited the issue of vindictiveness and the teaching of *Pearce*.  After McCullough was initially convicted of murder and sentenced by the jury to a prison sentence of twenty years, the trial court granted his motion for new trial based on prosecutorial misconduct.  *McCullough*, 475 U.S. at 135-36.  McCullough had a second jury trial, with the same trial judge presiding.  After the jury found him guilty, McCullough elected to be sentenced by the trial judge, who sentenced him to fifty years in prison.  The Supreme Court declined to apply a presumption of vindictiveness for two

reasons.  First, the Court observed that the trial judge herself had granted McCullough's motion for new trial.  Unlike a judge whose ruling had been reversed by an appellate court, this trial judge was deemed not to have "motivation to engage in self-vindication." *Id.* at 138-39.  Second, the presumption was deemed "inapplicable because different sentencers assessed the varying sentences that McCullough received."  *Id.* at 140. Moreover, even if the presumption were deemed to apply, the Court held that it had been rebutted by the trial court's findings based on objective information justifying the increased sentence.

Relying on these authorities, as well as state court precedents applying them, the Ohio Court of Appeals concluded that the presumption of vindictiveness did not apply in this case because the harsher thirteen-year sentence was imposed by a different sentencer than had imposed the original nine-year sentence. *Goodell*, 2007 WL 2874334 at *3.  The court also determined that Goodell had  failed to identify evidence of actual vindictiveness.  *Id.* at *3-4.  The court thus affirmed the thirteen- year prison sentence.

### C.  District Court Ruling

#### 1.  *Presumption of Vindictiveness*

With reference to the same Supreme Court authorities, the district court concluded that Goodell's case "is on all fours with *Pearce*" and that the narrow holding of *Pearce* remained the governing and clearly established federal law at the time of Goodell's resentencings. *Goodell*, 676 F.Supp.2d at 644-47.  Applying *Pearce*, the court concluded that the presumption of vindictiveness does apply in this case.  The Ohio Court of Appeals' contrary holding was thus deemed to be contrary to clearly established federal law.  *Id.* at 645.  Further, the court observed in a footnote that the presumption had not been rebutted.  *Id.* at 647 n.7.  Therefore, habeas relief was conditionally granted.

The district court's ruling rests fundamentally on the determination that *Pearce* defines the governing "clearly established federal law."  Indeed, *Pearce* is the seminal Supreme Court holding, recognizing that judicial vindictiveness in sentencing violates

due process.  Yet, as the district court recognized, the Supreme Court has had numerous occasions in the last forty years to narrow, clarify and explain the import of *Pearce* in the context of analogous resentencing situations.  In *McCullough*, the Court recounted some of this history and attempted to distill its wisdom:

> Beyond doubt, vindictiveness of a sentencing judge is the evil the Court sought to prevent rather than simply enlarged sentences after a new trial. The *Pearce* requirements thus do not apply in every case where a convicted defendant receives a higher sentence on retrial.  Like other "judicially created means of effectuating the rights secured by the [Constitution]," *Stone v. Powell,* 428 U.S. 465, 482, 96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067 (1976), we have restricted application of *Pearce* to areas where its "objectives are thought most efficaciously served," 428 U.S. at 487, 96 S.Ct. at 3049.  Accordingly, in each case, we look to the need, under the circumstances, to "guard against vindictiveness in the resentencing process." *Chaffin v. Stynchcombe,* 412 U.S. 17, 25, 93 S.Ct. 1977, 1982, 36 L.Ed.2d 714 (1973) (emphasis omitted).  For example, in *Moon v. Maryland,* 398 U.S. 319, 90 S.Ct. 1730, 26 L.Ed.2d 262 (1970), we held that *Pearce* did not apply when the defendant conceded and it was clear that vindictiveness had played no part in the enlarged sentence. In *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), we saw no need for applying the presumption when the second court in a two-tier trial system imposed a longer sentence.  In *Chaffin, supra,* we held *Pearce* not applicable where a *jury* imposed the increased sentence on retrial. Where the prophylactic rule of *Pearce* does not apply, the defendant may still obtain relief if he can show actual vindictiveness upon resentencing. *Wasman v. United States,* 468 U.S. 559, 569, 104 S.Ct. 3217, 3223, 82 L.Ed.2d 424 (1984).

*McCullough*, 475 U.S. at 138.

The *McCullough* Court thus recognized that the *Pearce* presumption does not apply in every case where a convicted defendant receives a higher sentence on retrial, but only where the circumstances of the particular case give rise to a *need* to guard against vindictiveness.  The presumption is inappropriate if there is "no realistic motive for vindictive sentencing." *Id.* at 139.  *See also Alabama v. Smith*, 490 U.S. 794, 799- 800 (1989) (recognizing that the presumption applies only where the circumstances give rise to a "reasonable likelihood" that the sentence increase was the product of actual vindictiveness); *Goodwin*, 457 U.S. at 373 (same).  The *McCullough* Court held that the circumstances do not give rise to a need to apply the presumption where, as here, the

varying sentences were imposed by different sentencers. *McCullough*, 475 U.S. at 140. In such circumstances, the court noted, "a sentence 'increase' cannot truly be said to have taken place." *Id.*

The district court acknowledged that *McCullough* represented a "direct challenge to *Pearce*." *Goodell*, 676 F.Supp.2d at 645. Noting, however, that *McCullough* had stopped short of overruling *Pearce*, the district court narrowly construed *McCullough* as declining to extend the *Pearce* presumption, not in all cases where varying sentences are imposed by different sentencers, but only where, as in *McCullough*, the first sentencer was a jury and the second a judge. *Id.* at 646. This narrowing construction of *McCullough*'s broad language was justified, the district court reasoned, because *Pearce* itself had involved varying sentences imposed by different judges. The district court stated that the *McCullough* Court "had no occasion to decide whether the presumption applies when the second sentencer is a different judge on the same court as the judge who originally sentenced the defendant." *Id.*

Yet, the *McCullough* Court itself expressly disavowed this construction in footnote 3:

> *Pearce* itself apparently involved different judges presiding over the two trials, a fact that has led some courts to conclude by implication that the presumption of vindictiveness applies even where different sentencing judges are involved. *See*, *e.g., United States v. Hawthorne,* 532 F.2d 318, 323 (3d Cir.), *cert. denied*, 429 U.S. 894, 97 S.Ct. 254, 50 L.Ed.2d 177 (1976). That fact, however, may not have been drawn to the Court's attention and does not appear anywhere in the Court's opinion in *Pearce*. Clearly the Court did not focus on it as a consideration for its holding. *See Hardwick v. Doolittle,* 558 F.2d 292, 299 (5th Cir. 1977), *cert. denied*, 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978). Subsequent opinions have also elucidated the basis for the *Pearce* presumption. We held in *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), for instance, that the presumption derives from the judge's "personal stake in the prior conviction," *id.*, at 27, 93 S.Ct., at 1983, a statement clearly at odds with reading *Pearce* to answer the two-sentencer issue. We therefore decline to read *Pearce* as governing this issue. *See also* n. 4, *infra*.

*McCullough*, 475 U.S. at 140 n.3.  The *McCullough* Court thus expressly rejected the notion that *Pearce* stands for the proposition that the presumption applies where there are two different sentencers absent *other* circumstances that give rise to a need to protect against vindictiveness.  In *Pearce*, *McCullough* noted, there were "other circumstances" that drove the holding; namely, the State's failure to "offer 'any reason or justification' for the increased sentence."  *Id.* at 142 n.4 (quoting *Pearce*, 395 U.S. at 726).

The district court did not overlook *McCullough*'s instruction, but concluded: "Nevertheless, *McCullough* does not change the status of *Pearce*'s holding as clearly established law."  *Goodell*, 676 F.Supp.2d at 646.  The district court thus implicitly considered *McCullough*'s unambiguous teaching to be *dicta* beyond the scope of its *holding* and therefore impotent to alter the state of clearly established federal law.

But we find additional guidance in *McCullough*'s note 4, where the Court further explained the background of the *Pearce* decision:

> *Pearce* was argued on the assumption that the Constitution either absolutely forbade or permitted increased sentences on retrial.  None of the briefs advanced the intermediate position ultimately relied upon by the Court that the Constitution permits increased sentences only in certain circumstances. . . .  Thus, . . . "in formulating the standard set forth in *Pearce*, the Court was completely without the 'sharpen[ing of] the presentation of issues' provided by the adversary process, 'upon which the court so largely depends for illumination of difficult constitutional issues.'" . . .  But even if *Pearce* could be read to speak definitively to this situation, we are not reluctant to tailor judicially created rules to implement constitutional guarantees, like the *Pearce* rule . . . when the need to do so becomes apparent.

*McCullough*, 475 U.S. at 142 n.4 (citations omitted).  Again, the Court endeavored to make clear that the rule *Pearce* stands for is not as broad as its language could be construed to mean and that it is, as a judicially created prophylactic rule, subject to "tailoring" by the Court.  The Court unmistakably undertook a measure of tailoring in *McCullough*.  It can hardly be denied, on a fair reading of *McCullough*, that the Court intended to make it clear that a presumption of vindictiveness does not apply where an increased sentence is imposed by a different sentencer absent other circumstances

demonstrating a need to guard against vindictiveness. In fact, the *McCullough* majority opinion concludes: "It is appropriate that we clarify the scope and thrust of *Pearce*, and we do so here." *Id.* at 144.

The "clearly established law" inquiry begins with the holdings, as opposed to the dicta, of the Supreme Court's decisions. *Williams*, 529 U.S. at 412. In determining the "governing legal principles," *Lockyer*, 538 U.S. at 71-72, to be derived from the Supreme Court's holdings, we are hardly at liberty to ignore how the Supreme Court itself has later characterized, defined and "tailored" its holdings by the time of the state court decision being reviewed. In *McCullough*, the Supreme Court took pains to make clear that *Pearce* does not stand for the proposition that a presumption of vindictiveness arises whenever a defendant who has successfully challenged his conviction or sentence is subjected to harsher punishment on resentencing. Rather, *McCullough* teaches that the principle to be gleaned from *Pearce*, viewed in light of numerous intervening Supreme Court decisions, is that the presumption applies where the circumstances demonstrate a need to protect against vindictiveness. Or, in the terms used in *Alabama v. Smith*, 490 U.S. at 799-800, the presumption applies only where the circumstances give rise to a "reasonable likelihood" that the sentence increase was the product of judicial vindictiveness.

That this clarified principle derived from *McCullough* has become "clearly established" is also attested to by our own prior precedents. *See Gonzales v. Wolfe*, 290 F. App'x 799, 812-13 (6th Cir. 2008) (following *McCullough* and holding presumption not warranted where different judge imposed sentence after defendant's successful appeal). In *Gauntlett v. Kelley*, 849 F.2d 213 (6th Cir. 1988), too, we applied *McCullough*'s teaching as clarifying and defining the scope of *Pearce*:

> The *Pearce* presumption of vindictiveness does not apply where the second sentencer "has no motivation to engage in self-vindication," . . . and where the possibility of vindictiveness is highly speculative. . . . Further, when the sentences are imposed by different sentencers, the presumption does not apply because there has been no real "increase" in the sentence.

*Id.* at 217 (citations omitted). Notably, seven of our sister circuits have similarly concluded that the presumption does not apply when the varying sentences are imposed by different judges. *See United States v. Rodriguez*, 602 F.3d 346, 358 (5th Cir. 2010) (collecting cases).

Accordingly, we conclude the district court erred in its determination that the Ohio Court of Appeals' decision, applying the principles enunciated in *McCullough*, is contrary to clearly established federal law.[2] Rather, the Ohio Court of Appeals' determination that the presumption of vindictiveness does not apply in this case is entirely consonant with governing federal law. The harsher thirteen-year sentence received by Goodell was imposed by a judge different from the judge who had imposed the original nine-year sentence. This fact clearly undermines the applicability of the presumption. Apart from the fact that Goodell's ultimate sentence is longer than his original sentence, there are no other circumstances suggesting a need for the presumption to protect against vindictiveness. Quite to the contrary, Judge Cook's careful explanation of the reasons for the longer sentence, spelled out in the course of two resentencing hearings and summarized above, directly refutes the notion that vindictiveness played a role. Hence, the Ohio Court of Appeals' determination that the presumption was not applicable is neither contrary to nor an unreasonable application of clearly established federal law.[3]

---

[2]Nor does Supreme Court precedent clearly establish that the presumption applies to protect against "institutional vindictiveness," as opposed to just "personal vindictiveness," as suggested by the district court. *See Goodell*, 676 F.Supp.2d at 646-47. *McCullough* recognizes that the presumption of vindictiveness stemming from *Pearce* "derives from the judge's '*personal* stake in the prior conviction.'" *McCullough*, 475 U.S. at 140 n.3 (quoting *Chaffin*, 412 US. at 27) (emphasis added). There is little support for the notion that "institutional vindictiveness" is or should be recognized as a threat to the due process rights of defendants subject to resentencing. The *McCullough* Court declined to accept such a skeptical view of judicial temperament generally and of the judiciary as an institution, *see id.* at 139, and so do we. Of course, *evidence* of actual vindictiveness, personal or institutional, can and should be addressed on a case by case basis. There is no such evidence in this case.

[3]Even if the applicability of the *Pearce* presumption were not undermined by the fact of different sentencers, the district court's conclusion that *Pearce* controls and that the state court's ruling is contrary to *Pearce* would still be erroneous. The district court held that the Ohio Court of Appeals' decision satisfied the "contrary to" prerequisite for habeas relief under § 2254 because the facts of Goodell's resentencing situation are "materially indistinguishable" from those presented in *Pearce*. As explained above, however, the instant facts are materially distinguishable from those in *Pearce* in that Goodell's sentence increase was accompanied by an explicit statement of legitimate reasons, whereas no justification was offered for Pearce's sentence increase "beyond the naked power to impose it." *Pearce*, 395 U.S. at 726.

**2.** *Actual Vindictiveness*

Moreover, we find the district court erred in its conclusion that the presumption had not been rebutted. The district court simply stated that the presumption was not rebutted without any discussion of the record evidence that either supported or refuted the presumption. *Goodell*, 676 F.Supp.2d at 647 n.7. Though the Warden did not argue the rebuttal issue extensively at the district court level, it was nonetheless incumbent on the district court, before habeas relief could be granted, to hold that the state court's ruling was contrary to or an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1). The Ohio Court of Appeals, after concluding that the presumption was not applicable, did not address whether the presumption was rebutted. However, the appellate court properly went on to consider the evidence of actual vindictiveness, and found none. *Goodell*, 2007 WL 2874334 at *3-4. The appellate court specifically considered Judge Cook's statement to Goodell, at the close of the second resentencing hearing, "Okay. We'll see you back here probably in a couple of years." The court reasonably rejected the argument that this statement evidenced vindictiveness, finding that it simply reflected Judge Cook's cognizance of the pattern that had been established as Goodell's two prior sentences had been vacated and remanded.

Moreover, and more importantly, because Goodell's counsel astutely raised the question of vindictiveness at the first resentencing hearing, Judge Cook took the opportunity to carefully explain his thinking. After thoroughly reviewing the trial transcript and the newly prepared presentence report (containing objective information not available to the first sentencing judge), Judge Cook explained that his decision to run some of the sentences consecutively was driven by concerns about Goodell's extensive criminal history and the violence of the offense conduct. Judge Cook recognized that the offense conduct involved three different episodes, each with a separate criminal animus. He concluded that consecutive sentencing was necessary to reflect the seriousness of the offenses, to protect the public, and to punish Goodell.

Judge Cook's reasoning is in all respects plausible, reasonable and supported by the record. This is sufficient. *See McCullough*, 475 U.S. at 140 (reading *Pearce* as

requiring no more than "an on-the-record, wholly logical, nonvindictive reason for the sentence"). In response, Goodell, has not identified evidence impugning the integrity of Judge Cook's given reasons. Nor has he identified evidence of actual vindictiveness.

To be sure, Goodell was understandably disappointed to learn, after successfully challenging his original sentence, that his sentence would ultimately be increased. Yet, as the *McCullough* Court observed, "[n]othing in the Constitution requires a judge to ignore 'objective information . . . justifying the increased sentence.'" *Id.* at 142 (quoting *Goodwin*, 457 U.S. at 374).

## III

For all the foregoing reasons, the order of the district court conditionally granting habeas relief is **REVERSED**. The matter is **REMANDED** to the district court for entry of an order denying Goodell's habeas petition on the merits.