NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0805n.06

**Case No. 14-4174**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Dec 10, 2015
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| JEREMIAH CRAYCRAFT, | ) | |
| | ) | |
| *Petitioner-Appellant*, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| BRIAN COOK, | ) | DISTRICT OF OHIO |
| | ) | |
| *Respondent-Appellee*. | ) | |
| | ) | |
| | ) | O P I N I O N |

BEFORE:     COLE, Chief Judge; SUTTON, Circuit Judge; BELL, District Judge.[*]

COLE, Chief Judge.  An Ohio jury convicted Jeremiah Craycraft of felonious assault, child endangerment, and domestic violence after he physically abused his newborn twins. Craycraft was sentenced to 22 years' imprisonment.  But he appealed, reaped the benefit of an intervening change in Ohio law, and was ultimately resentenced to a 16-year term.  Still dissatisfied with this result, Craycraft appealed once more, arguing that his revised sentence was tainted by judicial vindictiveness.  *See North Carolina v. Pearce*, 395 U.S 711 (1969).  The Ohio Court of Appeals disagreed and affirmed his sentence on direct appeal.  Craycraft then sought a writ of habeas corpus in federal district court, renewing his *Pearce* claim.  The district court

---

[*] The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

denied his petition. Because the Ohio Court of Appeals reasonably applied clearly established federal law, we affirm.

I.

On March 8, 2007, Staci Kraft gave birth to twins, K.C. and S.C. Craycraft is their father and, at times, he would care for the newborns while Kraft worked. Over the course of the next two months, however, K.C. and S.C. sustained a litany of injuries on Craycraft's watch. In all, K.C. suffered a broken wrist, a subdural hematoma, and forehead swelling and bruising, while S.C. endured a fractured femur and ribs, a subdural hematoma, a torn frenulum, and orbital bruising. *See State v. Craycraft*, No. CA2009-02-013, 2010 WL 610601, at *13–16 (Ohio Ct. App. Feb. 22, 2010). A few months later, a grand jury in Clermont, Ohio, indicted Craycraft on two counts each of felonious assault, second- and third-degree child endangerment, and domestic violence. *See* Ohio Rev. Code §§ 2903.11(A)(1), 2919.22(A), 2919.22(B)(1), 2919.25(A). After a jury trial, he was found guilty on all counts.

The trial court sentenced Craycraft to 22 years' imprisonment. The court first imposed two six-year terms for the felonious assault convictions, then merged the second- and third-degree child endangerment convictions and imposed two five-year terms, with all sentences running consecutively. As for the domestic violence convictions, the court imposed two four-year terms, to be served concurrent to the sentences for the other charges.

Craycraft appealed the trial court's sentencing decision, arguing that it misapplied Ohio's multiple-count statute. *Craycraft*, 2010 WL 610601, at *17. According to Craycraft, the court should have merged all of his convictions because, under Ohio Revised Code § 2941.25, felonious assault, child endangerment, and domestic violence are all "of similar import." *Id.* The Ohio Court of Appeals affirmed. Under *State v. Cabrales*, 886 N.E.2d 181 (Ohio 2008), the

court was only required to "compare the elements of the offenses in the abstract without considering the evidence in the case." *Craycraft* 2010 WL 610601, at *17. And, under this rubric, the court determined that the elements of Craycraft's offenses were "not so similar" in the abstract as to require merger. *Id.* at *19.

While Craycraft's appeal was pending in the Ohio Supreme Court, however, an intervening decision came down. In *State v. Johnson*, 942 N.E.2d 1061 (Ohio 2010), the state high court overruled the "abstract elements" test and held that "[w]hen determining whether two offenses are . . . subject to merger under [§] 2941.25, the conduct of the accused must be considered." *Id.* at 1069. Accordingly, the court summarily reversed and remanded Craycraft's case to the intermediate appellate court on the sentencing issue. *State v. Craycraft*, 944 N.E.2d 220 (Ohio 2010).

On remand, the Ohio Court of Appeals recognized that "it is possible to commit the offenses of felonious assault, second- and third-degree child endangering, and domestic violence with the same conduct." *State v. Craycraft*, 953 N.E.2d 337, 339 (Ohio Ct. App. 2011). The court determined that, under *Johnson*, Craycraft's offenses were "of similar import and must be merged," then remanded for further proceedings. *Id.* at 340.

Back in the trial court, the same judge conducted a de novo resentencing and, after a full hearing, imposed two back-to-back eight-year terms for the felonious assault counts, then merged the rest. In sum, Craycraft received 16 years' imprisonment—a net six-year reduction.

Undeterred, Craycraft filed another appeal, this time arguing that the trial court violated his Fourteenth Amendment right to Due Process under *Pearce* by "increasing the sentence he received on each felonious assault offense from a six-year prison term to an eight-year prison term." *State v. Craycraft*, No. CA2011-04-029, 2012 WL 699577, at *2 (Ohio Ct. App. Mar. 5,

2012). The Ohio Court of Appeals, once more, disagreed and affirmed Craycraft's sentence. *Id.* at \*2–4. This was the final decision of the state courts, as the Ohio Supreme Court declined his subsequent appeal. *See* 28 U.S.C. § 2254(b); *State v. Craycraft*, 969 N.E.2d 1231 (Ohio 2012) (table decision).

In 2013, Craycraft filed this petition for habeas corpus in the Southern District of Ohio, renewing his judicial vindictiveness claim. The district court dismissed the petition, but granted a certificate of appealability.

## II.

We review the district court's legal conclusions de novo. *Goodell v. Williams*, 643 F.3d 490, 495 (6th Cir. 2011). The Ohio Court of Appeals decided Craycraft's *Pearce* claim on the merits. *See* 28 U.S.C. § 2254(d). Accordingly, in order to obtain relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Craycraft must establish that the state court's "adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

"[C]learly established Federal law," for purposes of AEDPA, refers to the Court's "holdings, as opposed to [its] dicta." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Craycraft does not develop any argument that the state court's decision was in fact "contrary to" any of the Court's precedents. *See* 28 U.S.C. § 2254(d)(1); *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). Accordingly, we restrict our review to AEDPA's unreasonable-application clause. *See Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 n.2 (2013).

A state court's decision amounts to an "unreasonable application" of clearly established federal law if it "identifies the correct governing legal principle from [the] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. As the Supreme Court has made crystal clear, we may not grant the writ under AEDPA's unreasonable-application clause unless the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

## III.

Our role is limited. We simply ask whether the Ohio Court of Appeals' decision on the merits unreasonably applied clearly established Supreme Court precedent. Here, the state court reasoned that *Pearce* did not apply to Craycraft's sentence and that the record was devoid of evidence of judicial vindictiveness. *Craycraft*, 2012 WL 699577, at *3, 4. We cannot say that this decision was mistaken "beyond any possibility for fairminded disagreement." *See Harrington*, 562 U.S. at 103. Quite to the contrary, it is Craycraft who elides over 40 years of clearly established Supreme Court precedent. *See Goodell*, 643 F.3d at 497.

## A.

A brief review is in order. In *Pearce,* the Supreme Court considered the "constitutional limitations . . . upon the general power of a judge to impose upon reconviction a longer prison sentence than the defendant originally received." 395 U.S. at 719. "Due process of law," the Court held, "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id.* at 725. Because "the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal," the Court continued, "due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id.* To ensure

the absence of these unconstitutional conditions, the Court fashioned a prophylactic presumption: "[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." *Id.* at 726.

Although *Pearce* itself announced "a rule of sweeping dimension," the Court subsequently clarified that the presumption of vindictiveness "do[es] not apply in every case where a convicted defendant receives a higher sentence" on remand. *See Alabama v. Smith*, 490 U.S. 794, 799 (1989) (quoting *Texas v. McCullough*, 475 U.S. 134, 138 (1986)). Thus, *Pearce* no longer comes into play "whenever a judge imposes a more severe sentence" the second time around. *See Pearce*, 395 U.S. at 726. Rather, the Court has circumscribed the rule's scope to "areas where its 'objectives are thought most efficaciously served.'" *McCullough*, 475 U.S. at 138 (quoting *Stone v. Powell*, 428 U.S. 465, 487 (1976)). In each case, the Court looks to "the need, under the circumstances, to 'guard against vindictiveness in the resentencing process,'" *id.* (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 25 (1973)), and applies the presumption only where there is a "reasonable likelihood" that the increased sentence is the product of "actual vindictiveness" on the part of the sentencing judge. *Smith*, 490 U.S. at 799–800.

B.

For starters, Craycraft argues that, on a pure count-by-count basis, he received a more severe sentence following his successful appeal. He insists that *Pearce* required the state court to compare his original felonious assault sentence—12 years—with his subsequent felonious assault sentence—16 years. This four-year increase, he says, triggers the presumption of vindictiveness. Although the Ohio court did not address this theory head on, we must consider any arguments that "could have supported" its decision. *See Harrington*, 562 U.S. at 102.

Craycraft has not identified a single Supreme Court precedent in support of his argument. This dearth underscores a stark reality—as we have held, the *Pearce* presumption does not apply when a defendant is resentenced to an equal or lesser aggregate term. *See United States v. Rodgers*, 278 F.3d 599, 604 (6th Cir. 2002). "In determining whether the resentence term is . . . longer than . . . the original sentencing term," we "compare the total resentence term with the total original sentence." *Rodgers*, 278 F.3d at 604. Here, Craycraft's total original sentence was 22 years and his resentence term was 16 years—a net decrease of six years. This net reduction cannot genuinely be called a "more severe sentence" under *Pearce*.

In fact, no federal court has adopted Craycraft's methodology. Rather, the majority of circuits follow the aggregate approach. *See, e.g.*, *United States v. Pimienta-Redondo*, 874 F.2d 9, 15 (1st Cir. 1989) (en banc); *Kelly v. Neubert*, 898 F.2d 15, 18 (3d Cir. 1990); *United States v. Gray*, 852 F.2d 136, 138 (4th Cir. 1988); *United States v. Campbell*, 106 F.3d 64, 68 (5th Cir. 1997); *United States v. Shue*, 825 F.2d 1111, 1115 (7th Cir. 1987); *United States v. Evans*, 314 F.3d 329, 334 (8th Cir. 2002); *United States v. Bay*, 820 F.2d 1511, 1513 (9th Cir. 1987); *United States v. Sullivan*, 967 F.2d 370, 374–75 (10th Cir. 1992). And, at best, two circuits apply a "remainder" aggregate approach. *See United States v. Markus*, 603 F.2d 409, 413 (2d Cir. 1979); *United States v. Monaco*, 702 F.2d 860, 885 (11th Cir. 1983). Given this legal landscape, we cannot say the Ohio Court of Appeals unreasonably applied Supreme Court precedent.

Next, Craycraft argues that the Ohio Court of Appeals unreasonably applied *Pearce* by suggesting that "the presumption of vindictiveness [does not] automatically appl[y] when a defendant is resentenced following a remand for the application of" an intervening change in law. *See Craycraft*, 2012 WL 699577, at *3. He asserts that "[n]othing in *Pearce* or any of its progeny gives any weight to why" the defendant was resentenced. He is wrong.

As discussed above, the applicable standard is a general one: *Pearce* applies, on a case-by-case basis, only where a reasonably likely incentive to retaliate exists. *See, e.g.*, *Smith*, 490 U.S. at 799; *McCullough*, 475 U.S. at 138–39; *United States v. Goodwin*, 457 U.S. 368, 373 (1982); *Chaffin,* 412 U.S. at 27–28; *Colten v. Kentucky*, 407 U.S. 104, 116–17 (1972). And, for purposes of AEDPA, "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

As the Ohio Court of Appeals recognized in this case, it is highly implausible that Craycraft's sentence was the product of actual vindictiveness. *See Craycraft*, 2012 WL 699577, at \*3. The Ohio Supreme Court unexpectedly changed the law of allied-offense sentencing while Craycraft's appeal was pending. *See Johnson*, 942 N.E.2d 1069. This intervening cause dispelled any hint of vindictiveness: On remand, the trial court had "no personal stake" in the prior sentence and "no motivation to engage in self-vindication" because it was not reversed for committing error. *See Chaffin*, 412 U.S. at 27. And surely, the court was not "asked to do over what it thought it had already done correctly" because at the original sentencing hearing it followed then-existing law to a tee. *See Colten*, 407 U.S. at 117.

This was not an unreasonable application of the Court's precedents, as fairminded jurists could have reached the same result. *See United States v. Singletary*, 458 F.3d 72, 77 (2d Cir. 2006) (holding that an "intervening change in law . . . can itself justify an increased sentence on remand, thereby precluding application of the *Pearce* presumption"); *cf. Wasman v. United States*, 468 U.S. 559, 571 (1984) (holding that intervening conduct may be used to rebut the presumption of vindictiveness).

Absent *Pearce*'s aid, the burden remained on Craycraft to prove actual vindictiveness. *See Smith*, 490 U.S. at 799–800. Yet he did not point to any evidence of actual vindictiveness in

the record. As the Ohio Court of Appeals reasonably concluded, Craycraft failed to carry his

burden. *See Craycraft*, 2012 WL 699577, at *3.

IV.

Craycraft was originally sentenced to 22 years' imprisonment and, following an

intervening change in Ohio law, he was resentenced to a reduced term of 16 years. The Ohio

Court of Appeals held that his revised sentence did not trigger the *Pearce* presumption of

vindictiveness, nor was there any evidence of actual vindictiveness in the record. Because this

decision was not an unreasonable application of clearly established federal law, AEDPA requires

us to affirm the district court's dismissal of Craycraft's habeas petition.