NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0283n.06

No. 10-2284

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Mar 21, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PRENTICE WATKINS, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Petitioner-Appellant, | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| v. | ) | |
| | ) | |
| BLAINE LAFLER, Warden, | ) | |
| | ) | O P I N I O N |
| Respondent-Appellee. | ) | |

BEFORE:  COOK and STRANCH, Circuit Judges, and STAMP, District Judge.[*]

**FREDERICK P. STAMP, JR., Senior District Judge.**   Petitioner-appellant ("Watkins")

appeals the order of the United States District Court for the Eastern District of Michigan ("district

court") denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he

challenged his convictions for first degree felony murder in violation of M.C.L.A. § 750.316 and

felony-firearm in violation of M.C.L.A. § 750.227b.  On appeal, Watkins alleges that (1) the district

court erred in denying his ineffective assistance of counsel claims when his trial counsel advised him

to waive his right to a jury trial and plead guilty to open murder, failed to investigate his history of

mental illness, and was allegedly laboring under a conflict of interest; (2) the district court erred in

---

[*]The Honorable Frederick P. Stamp, Jr., Senior United States District Judge for the Northern
District of West Virginia, sitting by designation.

1

refusing to grant Watkins' petition on the basis of the argument that his Fifth Amendment privilege against self-incrimination was violated when he was called by the trial court to testify at a hearing to determine the degree of murder of which he was guilty; and (3) the district court erred in failing to grant the petition based upon the argument that the state court accepted Watkins' plea of guilty when there was an insufficient presentation of evidence of guilt. For the reasons stated below, we affirm the district court's denial of Watkins' petition for writ of habeas corpus on all grounds asserted.

## I. Background

Both parties, as well as the district court, directly quote and adopt the findings of the Michigan Court of Appeals as to the underlying facts surrounding Watkins' arrest and conviction. Accordingly, this Court does the same.[1]

> On January 18, 1998, Allen Russell Stewart was shot in the back in his mother's front yard and died the same day from his gunshot wound. There were no eyewitnesses to the shooting, although the next-door neighbor recalled seeing two men standing by a tree shortly before Allen was shot, and stated that she heard the gunshot. Allen's mother, Charlene Stewart, also heard a loud noise at the time of the shooting and observed Allen staggering into her kitchen with blood on his head. Charlene said that after Allen was shot, she was unable to locate his wallet or several pieces of jewelry that he normally wore. A police officer who responded to Charlene's 911 call noticed that Allen had duct tape on his wrists. After a search of Allen's room at his mother's house, the officer found what appeared to be drug-trafficking paraphernalia and 10.98 grams of crack cocaine with an estimated value of $1,000.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), all facts recited are as determined by the state court and "shall be presumed to be correct."

The police subsequently received information that [Watkins] may have been involved in the shooting. A police detective traveled to Kentucky, where [Watkins] was in jail on an unrelated charge, and interviewed [him] after he waived his *Miranda* rights. According to the detective, [Watkins] initially denied any involvement in the shooting or that he had ever been to Michigan. During a third interview, [Watkins] allegedly admitted that he and a friend, Ardell Robinson, went to the neighborhood to attend a party and sat on the hood of Allen's car waiting for the party to begin. [Watkins] claimed that Allen pushed him and his gun went off as he slipped and fell. In a fifth interview, [Watkins] allegedly told the detective that Robinson gave him a gun before they arrived in Allen's neighborhood. [Watkins] said that Robinson grabbed Allen, and when Allen broke away and approached [Watkins], he pulled his gun and it went off. The detective claimed that [Watkins] further admitted that he and Robinson discussed robbing someone.

The prosecution charged [Watkins] with open murder and felony firearm. At a hearing on November 4, 1999, [Watkins] pleaded guilty to both charges and claimed that he shot Allen after the two fought. During the course of the plea hearing, the court informed [Watkins] that by pleading guilty he was waiving his right to a jury trial and the right to remain silent at that trial. [Watkins] indicated his understanding of his rights and the consequences of his plea and waived his rights on the record.

On November 8, 1999, the court held a degree hearing pursuant to M.C.L. § 750.318. At the hearing, the prosecution presented several witnesses, including Charlene Stewart, the police officer who responded to the scene following the shooting, and the detective who interviewed [Watkins]. The prosecution also called a forensic pathologist who testified that Allen had scrapes on his forehead and face and died as a result of the gunshot wound. According to the pathologist, the bullet entered Allen's back, traveled down through his body, perforating his aorta, and stopped in his thigh. After the prosecution and defense rested, the court called [Watkins] as a witness, and he was questioned both by the court and the prosecution. Defense counsel did not object to the court calling [Watkins] as a witness or to [Watkins'] testimony. During his testimony, [Watkins] denied robbing Allen and continued to insist that the shooting occurred as the two fought.

In an oral decision following the degree hearing, the trial court found that [Watkins] planned to rob Allen and the shooting could not have happened in the manner described by [Watkins]. The court then concluded that the killing constituted felony murder because it occurred during the course of a robbery.

3

No. 10-2284
*Watkins v. Lafler, Warden*

*People v. Watkins*, 634 N.W.2d 370, 374-75 (Mich. Ct. App. 2001) (footnotes omitted).


Based upon its conclusion that Watkins was guilty of first degree felony murder, the trial court sentenced him to a mandatory life sentence without the possibility of parole on the murder count, and two years on the felony firearm count. Watkins subsequently moved to withdraw his plea, which motion was denied by the trial court. He then appealed his conviction and sentence. The Michigan Court of Appeals denied this appeal, *Watkins*, 634 N.W.3d at 373-82, as did the Michigan Supreme Court, *People v. Watkins*, 661 N.W.2d 553 (Mich. 2003). Following the state appellate courts' denial of his appeals, Watkins filed the instant Petition for Writ of Habeas Corpus in the United States District Court for the Eastern District of Michigan, and after the district court held the petition in abeyance to allow Watkins to exhaust all of his claims in state court, the petition was reinstated and the district court appointed counsel and granted an evidentiary hearing on Watkins' ineffective assistance of counsel claims which are raised here on appeal.

Following this evidentiary hearing and supplemental briefing by the parties, the district court issued an "Opinion and Order Denying the Petition for Writ of Habeas Corpus" on all of Watkins' assertions of error. The district court also granted a certificate of appealability and leave to appeal *in forma pauperis*. Watkins' notice of appeal was timely filed.

Subject matter jurisdiction over this matter was conferred to the federal district court by 28 U.S.C. § 2254. This Court has jurisdiction to hear this appeal as of right pursuant to 28 U.S.C. § 1291, which authorizes an appeal from a final order by a district court.

4

## II. Analysis

The district court reviewed the findings of the state court of appeals based upon whether the state court's rulings were "contrary to, or involved an unreasonable application of, clearly established Federal Law." *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000) (quoting 28 U.S.C. § 2254(d)). A decision that is contrary to clearly established federal law is one that is "opposite to that reached by [the United States Supreme] Court on a question of law," or one that is opposite to a decision reached by the United States Supreme Court "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Further, a decision contrary to established federal law can be one that "identifies the correct governing legal principle" but that "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

This Court reviews the district court's decision denying Watkins' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 *de novo*. *Goodell v. Williams*, 643 F.3d 490, 495 (6th Cir. 2011).

## A. Ineffective assistance of counsel

Watkins' first charge of error asserts that he was denied his Sixth and Fourteenth Amendment right to effective assistance of trial counsel because (1) trial counsel in this matter encouraged him to plead guilty to open murder, (2) trial counsel did not investigate Watkins' history of mental illness, and (3) trial counsel labored under a conflict of interest. In order to succeed on these claims, Watkins bears the burden of proving that his trial counsel's performance fell below the range of reasonable professional assistance. This burden of proof is met through satisfaction of the *Strickland*

test, as promulgated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  This test requires two specific showings: that with regard to each charge of ineffectiveness, trial counsel (1) "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) "that the deficient performance prejudiced the defense."  *Id.* at 687.  The Court is charged with evaluating the claims of ineffectiveness as to their cumulative effect in light of the totality of the circumstances.  *Id.* at 695-96.

> ### 1.        Open murder guilty plea

This claim of error, Watkins' central claim of error as to ineffective assistance of counsel, asserts that trial counsel was ineffective in counseling Watkins to plead guilty to open murder.  The crux of Watkins' argument is that it falls below the applicable standards of practice for defense trial counsel in a first degree murder case to encourage a defendant to waive a jury trial and plead guilty to open murder when that defendant consistently claims that a shooting was an accident, as was the case here.  He maintains that such encouragement amounts to ineffective assistance of counsel because a plea of guilty to open murder allows the judge alone to determine the degree of murder of which the defendant is guilty, and totally precludes a finding of manslaughter.  Watkins also argues that trial counsel was deficient in failing to do any outside investigation of the facts of the case and in failing to contact Ardell Robinson's attorney to inquire about Mr. Robinson testifying for the defendant; was deficient in not objecting to the trial court calling Watkins to testify at his degree hearing; and was deficient in not informing his client of the repercussions of pleading guilty

to open murder to sufficiently allow Watkins to make a knowing and understanding waiver of a jury trial.[2]

The district court, in rejecting the claim that trial counsel was ineffective in recommending that the defendant plead guilty to open murder, found that the decision to waive a jury trial in this case was a reasoned trial strategy, well explained by trial counsel at the evidentiary hearing for this case. The district court also found that, even if Watkins had shown that trial counsel's actions were objectively unreasonable, he had failed to present evidence of prejudice. With regard to counsel's failure to perform an independent investigation and failure to object to Watkins' testimony at the degree hearing, the district court concluded that, without a showing of prejudice, a finding on whether counsel should have done either of these things was unnecessary. Finally, the district court reasoned that, based upon the plea hearing colloquy alone, Watkins gave a knowing and willing waiver of a jury trial, and any possible failure of trial counsel in fully explaining the repercussions of such a waiver was cured by that hearing. This Court affirms the district court's findings in all respects with regard to this claim of error.

A criminal defendant is entitled to a constitutionally adequate defense during pretrial proceedings, but when evidence exists to support a finding that trial counsel's decisions and actions were based upon a trial strategy, unless that strategy was objectively unreasonable, the defendant has

---

[2]Watkins also claims that, because he was ultimately convicted of felony murder, he was convicted of a crime of which he was not charged and that trial counsel's failure to object to the same constituted ineffective assistance of counsel. However, as the district court found, in Michigan, felony murder is included within open murder. *See People v. McKinney*, 237 N.W.2d 215, 217-18 (Mich. Ct. App. 1975).

failed to show deficient performance. *See Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012) ("[T]he right to the effective assistance of counsel applies to certain steps before trial . . . . Critical stages include . . . the entry of a guilty plea."); *United States v. Munoz*, 605 F.3d 359, 376-77 (6th Cir. 2010). We agree with the district court that Watkins has failed to show that trial counsel's decision to encourage Watkins to plead guilty to open murder was based upon objectively unreasonable strategy.

At the evidentiary hearing before the district court, trial counsel testified that his experience has taught him that judges tend to ask more questions and to follow evidentiary rules less strictly during degree hearings than they do at bench trials, which he believed would be beneficial to Watkins. He further testified that, while Watkins claimed that the shooting was accidental and such an accidental shooting could have led to a manslaughter instruction at trial, he thought that Watkins' claims would be attacked as self-serving if the case went to trial, and that the prosecution had a strong case; the evidence of which contradicted Watkins' claim of an accidental shooting and could open Watkins "up to something far more severe than first degree murder." Trial counsel also stated that he believed the judge assigned to Watkins' case to be a liberal judge, and that the history in "Jackson County up to that point was that at virtually every degree hearing, the judges had returned a verdict of second degree at worst, and given the fact that I had the most liberal judge on the bench," he believed the chances of getting Watkins second degree murder through pleading guilty to open murder and going to a degree hearing were much higher than going to trial before a jury in that county. (Evid. Hr'g Tr. *42.) In addition to the above testimony regarding his strategy behind

encouraging Watkins to plead guilty to open murder, trial counsel also testified regarding his background, his extensive criminal defense experience, and specifically his extensive murder defense experience, as well as his relationship with Watkins during his defense. (Evid. Hr'g Tr. *20-24.)

As outlined above, trial counsel gave a reasoned and supported explanation for his decision to advise the defendant to plead guilty and go to a degree hearing rather than to go before a jury. He believed that the prosecution had a strong case for intentional murder, that the evidence contradicted Watkins' assertions that the shooting was an accident, and that the judges in Jackson County, and specifically the judge assigned to Watkins' case, were much more likely to convict Watkins of second degree murder than were juries in that county. *See Munoz*, 605 F.3d at 379 (endorsing the use of personal knowledge regarding past interaction with judges and juries to support sound trial strategy). Simply because the defendant maintained his innocence of intentional murder in this case does not make counsel's decision to advise him to plead guilty to open murder constitutionally deficient. Trial counsel clearly made a reasoned assessment of Watkins' realistic risk at trial versus his risk at a degree hearing, and came to the conclusion that the latter was of lesser risk. Because his strategy yielded an undesirable result does not mean it was objectively unreasonable.

Further, even if Watkins could satisfy his burden of showing that trial counsel's decision to recommend that Watkins waive a jury trial and plead guilty was deficient under the first prong of *Strickland*, he fails to show that he was prejudiced by it. In order to show prejudice in the context of a plea, Watkins must provide evidence "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*

*v. Lockhart*, 474 U.S. 52, 59 (1985). In order to assess whether this burden has been met, the court must determine "whether the affirmative defense likely would have succeeded at trial." *Id.* Watkins makes little attempt to satisfy this prong here. Throughout the briefing of this appeal, Watkins repeatedly reminds the Court that he continually maintained that the shooting was an accident, and that his story did not change throughout the investigation, and that, if believed by a jury, "it is certainly possible that a jury could have found the lesser offense of second degree murder, or even manslaughter." Not only are these statements by Watkins insufficient to show that he would have likely been convicted of less than first degree murder at trial, they ignore the evidence that the prosecution would have presented which outweighed and strongly contradicted Watkins' assertions, which were unsupported by any facts other than his own statements.

Initially, the record shows that, before the shooting occurred, witnesses saw Watkins and Ardell Robinson standing behind a tree near where the victim was shot. This is inconsistent with Watkins' testimony that he was sitting on the victim's car waiting for a party to start when the altercation began. Further, the victim was found by his mother to be bound with tape around his wrists and to be missing his wallet and several pieces of jewelry that he normally wore–evidence which is consistent with the victim being robbed. The victim's facial wounds were also inconsistent with Watkins' story that the victim pushed him causing his gun to discharge, and with his testimony that he pulled his gun as the victim approached him. Further, the pathologist's testimony that the victim was shot from behind and that the bullet traveled down through his body, stopping in his thigh, is also at variance with Watkins' testimony that the victim was standing and facing him as the

two fought when the gun accidentally discharged. Finally, Watkins himself admitted that he and Ardell Robinson had discussed robbing the victim. All of this evidence strongly points to a conclusion that Watkins did not have a reasonable likelihood of receiving a more favorable result from a trial, and thus Watkins has failed to show prejudice resulting from trial counsel's advice that the defendant plead guilty rather than go to trial.

The above facts similarly belie defendant's claim that trial counsel was ineffective in failing to conduct his own outside investigation, and in failing to contact Ardell Robinson's attorney about Mr. Robinson's possible testimony. Without a showing of prejudice, Watkins cannot prove ineffective assistance of counsel through a failure to conduct an independent investigation of the facts. *See Moss v. Hofbauer*, 286 F.3d 851, 867 (6th Cir. 2002). In addition to the evidence that contradicted Watkins' claims of an accidental shooting and strongly suggested that Watkins was robbing the victim when he was shot, Watkins has presented no argument to suggest that an independent investigation would have resulted in the uncovering of any evidence either to corroborate Watkins' claims or to refute the prosecution's evidence. Further, there has been no showing that Mr. Robinson's testimony would have aided Watkins' case in any way.

Watkins also points to trial counsel's failure to object or to ask questions of Watkins when he was called by the trial court to testify at his degree hearing. Again, simply because trial counsel's actions did not yield a positive result for Watkins does not make them deficient. "Silence can constitute trial strategy." *Id.* at 863 (quoting *Warner v. Ford*, 752 F.2d 622, 625 (11th Cir. 1985)). Counsel stated that he wanted the judge to be able to get a feel for who Watkins was, and that he

believed that was the best strategy because he did not think that Watkins would be taken as someone who intentionally murdered the victim. Further, for the reasons stated above, Watkins has also failed to present evidence of prejudice resulting from this silence.

Finally as to this claim of error, Watkins claims that trial counsel failed to properly ascertain whether he understood the charges against him and the ramifications of pleading guilty to open murder. However, there was no evidence provided to support this allegation. Trial counsel testified at the evidentiary hearing before the district court that he met with Watkins seven or eight times, explained the charges against him, and explained the option and consequences of pleading guilty to open murder and opting for a degree hearing. (Evid. Hr'g Tr. *23, 36-37, 42-43.) Trial counsel also testified that, in his meetings with Watkins, he learned that Watkins had only a ninth grade education, but that he never had an inclination that Watkins did not or could not understand his situation, his options, or the consequences of the same. (Evid. Hr'g Tr. *33.) Watkins provided nothing to refute this testimony and no affirmative evidence of Watkins' lack of understanding. Finally, as the district court pointed out, the trial judge informed Watkins at his plea hearing of his exposure to a non-parolable life sentence, and such a proper colloquy cures any failure by defense counsel to fully inform his client of the consequences of his plea. *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999). (*See* Plea Tr. *5-6.) For all of the reasons cited above, this Court affirms the district court's denial of the petition as to his first claim of error.

## 2. Trial counsel's failure to investigate Watkins' mental health history

Watkins next claims that the district court erred in dismissing his charge that trial counsel was ineffective in failing to investigate his mental health history. According to Watkins, had trial counsel "bothered to do any investigation of his client's background, or make a phone call to any family member, he would have learned that [Watkins] was poorly educated, attempted suicide, and spent time in juvenile treatment centers." (Appellant's Br. *27-28.) At the evidentiary hearing before the district court on this petition for habeas corpus, Watkins' mother testified that Watkins became a disciplinary problem at a young age, was placed in a juvenile treatment center due to truancy, and assigned a social worker for some time after his release. (Evid. Hr'g Tr. *9-17.) She further testified that Watkins would drink rubbing alcohol in what she deemed to be suicide attempts, would bang his head against walls, and left home at the age of fifteen to begin a life on the streets. However, Watkins' mother had no information as to any psychological diagnosis that was ever made as to Watkins, and Watkins admits that few medical records, all of which were from Watkins' childhood, could be obtained. (Appellant's Br. *29, *30.)

Watkins does not suggest, however, how any of this information would have impacted his conviction, sentence, or both. Watkins has presented no evidence or argument that he was mentally infirm at the time of the shooting, during any of his interactions with trial counsel, or at the time of any of the criminal proceedings resulting therefrom. Further, trial counsel indicated that he interviewed Watkins and discovered that he had only received a ninth-grade education, but that he did not feel that Watkins was unable to understand the situation or the crimes of which he was

13

charged. In short, Watkins again cannot show prejudice resulting from trial counsel's failure to investigate his mental health history. *See Thompson v. Bell*, 315 F.3d 566, 591-92 (6th Cir. 2003) (finding that, without evidence of "mental disease or defect at the time of the crime" or trial, a failure to investigate mental state of defendant does not result in prejudice, because there can be no "ineffective assistance of counsel unless the record establishes that there is actual mitigating evidence that was not presented.") (subsequent history omitted).

Further, it is acknowledged that the demands of the Sixth Amendment require "defense counsel to reasonably investigate a defendant's background and present it to the jury," *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997), and that the failure to conduct such an investigation "and to present mitigating evidence to the jury . . . can constitute ineffective assistance," *Poindexter v. Mitchell*, 454 F.3d 564, 577 (6th Cir. 2006). However, while the record does show evidence of Watkins' difficult childhood, as well as other background and family issues which could have served as mitigating factors in many cases, in this particular case, the failure to present this evidence did not prejudice Watkins. Here, Watkins was convicted of a crime which mandated a prison sentence of life without the possibility of parole. M.C.L.A. § 750.316(1)(b). Additionally, the particular type of first degree murder of which Watkins was convicted did not require a showing of specific intent to kill, but rather only attempt to rob, which was admitted by Watkins. *Id.* When the sentencing judge determined that Watkins had been attempting to rob the victim at the time of the shooting, Michigan state law mandated that he be sentenced to life in prison; no determination was necessary which could have taken Watkins' background into account. Accordingly, while it is arguable that

the failure to investigate Watkins' background and present mitigating evidence may have represented deficient representation, Watkins again cannot show that he was prejudiced by this failure.

### 3.     Trial counsel's alleged conflict of interest

In Watkins' final claim of error, he maintains that trial counsel rendered ineffective assistance because he was operating under a conflict of interest during his representation of Watkins.  In support of this assertion, Watkins argues that his trial counsel had been previously appointed briefly to represent Ardell Robinson in an unrelated case roughly five months before his appointment to represent Watkins, but after the death of the victim in this case.  Mr. Robinson dismissed Watkins' trial counsel from representation in that case after an undisputedly short amount of time.  Watkins argues that this created a conflict of interest and that this conflict resulted in trial counsel's failure to contact Mr. Robinson's attorney regarding Mr. Robinson's possible testimony for Watkins.

Watkins has failed to demonstrate the existence of an actual conflict of interest.  He asserts that his trial counsel "mention[ed] the name Allen Stewart [the victim in this case]" to Mr. Robinson during the short time when he represented him, and suggests that he pulled punches in not attempting to obtain testimony from Mr. Robinson as a result of this alleged conflict.  (Appellant's Br. *37) However, Watkins ignores the fact that his trial counsel was appointed to represent Mr. Robinson in an entirely unrelated case, and that his representation had completely ended roughly five months before he was assigned to represent Watkins in this case.  Accordingly, where the two representations were successive, the conflict in this case is not actual, but rather attenuated.

*Stewart v. Wolfenbarger*, 468 F.3d 338, 351 (6th Cir. 2006), is on point to this issue. In that case, this court determined that presumed prejudice due to an actual conflict of interest, as articulated by the United States Supreme Court in *Cuyler v. Sullivan*, 446 U.S. 335 (1980), does not apply in cases of successive representation. Rather, in cases such as these, the *Strickland* test applies. As stated above, no prejudice can be found in trial counsel's decision to not investigate the possible testimony of Mr. Robinson, because no evidence has been presented to suggest that Mr. Robinson would have testified in such a way that would have benefitted Watkins' case. Accordingly, Watkins has failed to support his claims for ineffective assistance of counsel on any of the grounds presented.

### 4.      Procedural default issues

The appellee also argues that all three of Watkins' claims of error with regard to his ineffective assistance of counsel claims are procedurally barred as insufficiently raised in state court. However, the district court specifically noted that it chose not to address these arguments and rather assumed that no procedural default existed, because "the procedural default issue raises more questions than the case on the merits." *Watkins v. Woods*, No. 04-cv-72112, 2010 U.S. Dist. LEXIS 94497 * 14 n.1 (E.D. Mich. Sept. 10, 2010). Given the variety and complexity of the defaults involved, as well as Watkins's failure to brief these issues, we do likewise.

### B.      Violation of Fifth Amendment right against self-incrimination

The second argument raised by Watkins on appeal is that the district court erred in finding that Watkins was not entitled to habeas corpus relief due to a violation of his Fifth Amendment right against self-incrimination when he was called by the trial judge to testify at his degree hearing. It

is clear that the overall finding of the district court, that the state court's decision to deny Watkins'

Fifth Amendment claim was not contrary to clearly established federal law, was not in error.

Accordingly, we deny Watkins' appeal and affirm the district court on this issue as well.

The district court deferred to the state court and concluded that Watkins waived his right

against self-incrimination when he was called by the trial judge to testify at his degree hearing, and

chose to do so without objection.  The Fifth Amendment protects individuals from "compelled"

testimony, but it has always been considered a waivable right, and any individual is free to

voluntarily testify.  If an individual "makes disclosures instead of claiming the privilege, the

government has not compelled him to incriminate himself." *Minnesota v. Murphy*, 465 U.S. 420,

427 (1984) (internal quotation marks and citations omitted).  Watkins argues that, in order for him

to have effectively waived these rights, his waiver must have been an "intelligent" one. *See Johnson

v. Zerbst*, 304 U.S. 458, 464 (1938) ("The determination of whether there has been an intelligent

waiver . . . must depend, in each case, upon the particular facts and circumstances surrounding that

case[.]"), *overruled in part on other grounds by Edwards v. Arizona*, 451 U.S. 477 (1981).  His

background and limited education, he maintains, establishes that such an intelligent waiver could

not have been made.

However, the Michigan Supreme Court specifically found that the appellant's Fifth

Amendment claim lacked merit because he failed to even attempt to invoke his privilege against

compelled self-incrimination. *People v. Watkins*, 661 N.W.2d 553, 557 (Mich. 2003) (per curiam).

Rather, the court found, he answered questions and made disclosures to the court.  Thus, under

17

*Minnesota v. Murphy*, he waived any right to remain silent. 465 U.S. at 427. Under 28 U.S.C. § 2254(e)(1), the factual determinations of the state court as to whether or not the appellant attempted to invoke his privilege against self incrimination are presumed correct unless the appellant rebuts the same "by clear and convincing evidence." The appellant has not so rebutted this presumption as to this factual finding. Nor has appellant shown an unreasonable application of federal law. Despite Watkins's claim of mental illness, he presents no evidence that diminished capacity affected his testimony at the degree hearing. Thus the district court properly deferred to the state court and found that the appellant had waived his right to remain silent by failing to invoke it. Accordingly, this Court affirms the district court on this basis.

## C.      Evidentiary support for acceptance of Watkins' guilty plea

Finally, Watkins asserts that the district court erred in refusing to reverse the state court's denial of Watkins' claim that his Fourteenth Amendment right to a fair trial was violated because the trial court allowed insufficient evidence to support Watkins' plea of guilty. This Court affirms the district court and dismisses this claim as well.

First, as the district court correctly concludes, the claim that the factual basis for a guilty plea was insufficient is not a cognizable claim for habeas corpus. The Constitution does not require a factual basis to establish a plea of guilty. *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995). While Michigan law requires such a factual basis pursuant to M.C.R. 6.302(D)(1), a mere violation of Michigan law cannot support a habeas claim.

Watkins also argues that, while he does not disagree with the district court's determination as to his plea of guilty to open murder, he nonetheless contends that insufficient evidence existed to support the trial court's ultimate conviction of first degree felony murder. The district court found that there was sufficient evidence to support this finding, and this Court affirms. The proper standard in assessing a challenge to the sufficiency of the evidence presented to support a verdict is whether, in "'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original).

Watkins here does not even attempt to argue that no rational trier of fact could have found Watkins guilty of first degree felony murder based upon the facts presented, but rather only argues that no direct evidence of robbery was presented and that the circumstantial evidence presented also supports "an equally reasonable inference that the victim was shot during a scuffle, and items stolen afterwards." (Appellant's Br. * 46.) This argument itself fails to allege the required standard, and even if it did, is not supported by the record. The elements of first degree felony murder in Michigan are as follows:

> (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing , attempting to commit, or assisting in the commission of any of a set of specifically enumerated felonies. [arson, criminal sexual conduct in the first, second, or third degree, child abuse in the first degree, a major controlled substance offense, robbery . . .]

*Matthews v. Abramajtys*, 319 F.3d 780, 789 (6th Cir. 2003) (citing *People v. Carines*, 597 N.W.2d 130, 136 (Mich. 1999)); Mich. Comp. Laws § 750.316. As described above, the evidence before the trial court strongly suggested that Watkins was attempting to rob the victim at the time of the shooting. It also strongly contradicts Watkins' claims that the shooting was an accident and that he was not robbing the victim. Even if Watkins' argument that the evidence supported a reasonable conclusion that the shooting was an accident had merit, this would not make the trial court's ultimate conclusion that Watkins was guilty of felony murder any less reasonable. Under the "any rational juror could conclude" standard, Watkins has failed to show that the trial court's verdict was insufficiently supported by facts.

### III. Conclusion

For the foregoing reasons, we AFFIRM in its entirety the district court's denial of Watkins' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on all grounds asserted.