RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0197p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ANDRE SINKFIELD,

Petitioner-Appellant,

v.

ANTHONY J. BRIGANO, Warden,

Respondent-Appellee.

No. 06-3512

>

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 03-00082—Walter H. Rice, District Judge.

Argued: January 23, 2007

Decided and Filed: May 29, 2007

Before: SILER, GIBBONS, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Darrell L. Heckman, Urbana, Ohio, for Appellant. M. Scott Criss, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Darrell L. Heckman, Urbana, Ohio, for Appellant. Mark Joseph Zemba, OFFICE OF THE ATTORNEY GENERAL, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

SILER, Circuit Judge. Andre Sinkfield appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He seeks relief from his state court convictions for aggravated robbery, attempted aggravated murder, aggravated murder, and having a weapon while under disability. We AFFIRM the denial of Sinkfield's habeas petition because the decision of the Ohio courts to exclude the potentially exculpatory testimony of two witnesses was neither contrary to, nor an unreasonable application of, federal law.

**I.**

In 1996, James Brown met Jay Washington, Brendan Byrdsong, and Bill Vance at Vance's house in Dayton, Ohio to smoke marijuana. Shortly after Brown arrived, two black males knocked on the front door. The two men were later identified by Brown as Jeffrey Stevens and Sinkfield. Although Vance greeted Stevens when he came through the door, the encounter soon turned violent. Stevens and Sinkfield, both visibly armed, demanded that Brown, Washington, Byrdsong, and

1

Vance get on the floor because they were being robbed. Stevens took money from Brown and retreated to a rear room. He returned with a pillow, placed it against Vance's head, and attempted to shoot Vance through the pillow. When his firearm malfunctioned, he took Sinkfield's gun from him and fired a single shot through the pillow, striking Vance in the back of the head.

Brown jumped from the ground and began wrestling with Stevens and Sinkfield. During the scuffle, Washington and Byrdsong fled the apartment. Brown broke free and attempted to flee as well, but was shot in the back as he reached the front door. Stevens and Sinkfield fled the apartment and were apparently accompanied by Washington. Byrdsong ran next door to the house of James Townsend, Vance's brother. Together, Byrdsong and Townsend ran down the street, called 911, and returned to Vance's house where they found Brown on the ground bleeding and Vance dead.

During the ensuing investigation, Brown identified Stevens as the shooter and Sinkfield as his accomplice in a subsequent photospread lineup. A Montgomery County grand jury indicted both Sinkfield and Stevens. Sinkfield was charged with three counts of aggravated robbery, Ohio Rev. Code. Ann. ("O.R.C.") § 2911.01(A)(1); one count of attempted aggravated murder, O.R.C. §§ 2903.01(B), 2903.02(A); one count of aggravated murder, O.R.C. § 2903.01(B); and one count of having a weapon while under disability, O.R.C. § 2923.12(A)(2).[1]

At trial, Sinkfield attempted to introduce testimony from two witnesses, Rod Garrett and Garrett's girlfriend, Karleia Gray. Sinkfield's counsel proffered that Garrett would testify that minutes after Vance's murder, he received a phone call from Stevens, who, in a shaking voice, told him that he and Henry Watson had just murdered Vance. This testimony was offered as an excited utterance, an admission against interest, and as a matter of constitutional law pursuant to *Chambers v. Mississippi*, 410 U.S. 284 (1973). The trial court permitted Garrett to testify that Stevens admitted that he murdered Vance, but excluded any reference that Stevens made to Watson's role in the crime.

Sinkfield's counsel also proffered that Gray would testify that immediately after Garrett hung up with Stevens (after Stevens's alleged confession), Garrett called Gray and repeated Stevens's statement that he and Watson had just murdered Vance. Defense counsel offered this testimony as an excited utterance on top of an excited utterance, and as a matter of constitutional law pursuant to *Chambers*. The trial court excluded this testimony as well.

Sinkfield was convicted on all counts and sentenced to life imprisonment for aggravated murder, ten to twenty-five years for aggravated robbery and attempted aggravated murder, and three to five years for having a weapon while under disability. In 2001, the Second District Court of Appeals for Montgomery County, Ohio affirmed Sinkfield's convictions. In 2002, the Supreme Court of Ohio dismissed his appeal because it failed to raise a substantial constitutional question. The United States Supreme Court denied Sinkfield's petition for writ of certiorari.

In 2003, Sinkfield filed a petition for a writ of habeas corpus in the federal district court, alleging that exclusion of Garrett and Gray's potentially exculpatory testimony was an unreasonable application of clearly established federal law – *Chambers*. Sinkfield's petition was referred to a magistrate judge, who found that the decision of the Court of Appeals of Ohio was an objectively reasonable application of *Chambers*. The district court adopted the magistrate judge's report and

---

[1] A firearm specification and specification related to Sinkfield's prior felony convictions were included on each count.

recommendation and denied Sinkfield's petition, agreeing that the state court of appeals' decision was not an unreasonable application of *Chambers*.[2]

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to Sinkfield's habeas petition because the petition was filed after AEDPA's effective date. *See* 28 U.S.C. § 2254. Under AEDPA, we "may not grant habeas relief for a state prisoner unless the state court adjudication of his claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Stuart v. Wilson*, 442 F.3d 506, 514-15 (6th Cir. 2006) (quoting 28 U.S.C. § 2254(d)(1)).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have separate meanings. Under the "contrary to" clause, a federal court may issue the writ if "the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause, a federal court may grant relief if "the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* (citing *Williams*, 529 U.S. at 407-08). An unreasonable application of federal law is one that is "objectively unreasonable" and not merely incorrect. *Johnson v. Luoma*, 425 F.3d 318, 324 (6th Cir. 2005).

State court factual findings and legal determinations are afforded heightened respect under AEDPA. *Spisak v. Mitchell*, 465 F.3d 684, 691 (6th Cir. 2006). "A determination of a factual issue made by a state court is presumed to be correct, and the Defendant has the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* (citing 28 U.S.C. § 2254(e)(1)).

Because federal habeas corpus is available only to remedy federal constitutional violations, *see* 28 U.S.C. § 2254(a), our review is limited to deciding whether exclusion of the testimony violated the United States Constitution. Sinkfield argues that the exclusion of this testimony violated his due process and compulsory process rights because it was an unreasonable application of *Chambers*. We disagree.

In *Chambers*, the defendant attempted to introduce three separate statements of another man, Gabe McDonald, in which he admitted responsibility for the murder with which the defendant was charged. The trial court refused to allow the testimony of three witnesses to whom McDonald confessed to committing the murder because the statements were hearsay. The Supreme Court acknowledged that McDonald's statements were technically hearsay that did not fall into an established exception, but found that, under the facts and circumstances of that case, the statements were required by the Constitution because they were made "under circumstances that provided considerable assurance of their reliability." *Chambers*, 410 U.S. at 300. Critical to the Court's holding was that the statements were: (1) spontaneously made to close friends shortly after the murder; (2) corroborated by other sufficiently strong evidence; and (3) undeniably self-incriminatory

---

[2]The district court stated:

> While this Court, were it sitting as the trier of fact, or, for that matter, as a member of an appellate panel on direct appeal, might have decided the issue differently, the undersigned is simply unable to say that the rationale and decision of the state court of appeals was "an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States."

and against his interest because he would not have benefitted by disclosing his role in the murder. *Id*. at 300-01.

In affirming Sinkfield's convictions, the Second District Court of Appeals of Ohio found that *Chambers* shared some similarity to Sinkfield's case because the defendants in both cases presented the defense that another person committed the crime for which they were charged. The court noted that Stevens's statement inculpating himself and Watson met the first element of *Chambers* because it was made soon after the murder. However, the court never unequivocally stated the result of its analysis of the second *Chambers* factor. While there was evidence corroborating Watson's involvement in the crime, the court found it difficult to overturn the trial court's decision to discredit the testimony because it was in the best position to determine the credibility of that testimony. Finally, with respect to the third *Chambers* factor, the court noted that unlike *Chambers*, where the statement was wholly self-inculpatory, Stevens's statement inculpated himself and another party, Watson.

The court turned to *Williamson v. United States*, 512 U.S. 594 (1994), for guidance in determining what effect Stevens's reference to Watson's role had on the reliability of his confession. In *Williamson*, the Court analyzed the admissibility of a declarant's statement that inculpated himself as well as the defendant, under Federal Rule of Evidence 804(b)(3). The Court noted that some statements inculpating the declarant and another party are not always truly self-inculpatory because the statements are instead intended to shift blame or curry favor. *Id*. at 601. Thus, the proper inquiry is "whether the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true,' and this question can only be answered in light of all the surrounding circumstances." *Id*. at 603-04 (quoting Fed. R. Evid. 804(b)(3)) (footnote omitted).

Even though the statement in *Williamson* inculpated the declarant and the defendant, whereas the statement in this case implicated the declarant and another party, the Ohio court nonetheless applied *Williamson* and found that Stevens's statement did not carry the same indicia of reliability as a truly self-inculpatory statement. Consequently, the court found no constitutional violation in excluding Garrett's and Gray's testimony. This decision was neither contrary to, nor an unreasonable application of *Chambers* for two reasons.

First, one of the factors the Supreme Court relied on in finding that the statements were constitutionally required in *Chambers*, the existence of sufficiently strong corroborating evidence, is not present in this case. Consistent with his defense that Watson, and not himself, was Stevens's accomplice, Sinkfield introduced corroborating evidence, including: testimony from Charles Sinkfield, the defendant's brother, and Tony Hill, in which both stated that Watson apologized to Keith DeWitt for getting him involved in his and Watson's situation; testimony that Watson and Stevens were long time friends and former fellow inmates; testimony linking Watson and Stevens together shortly before the murders; Watson's similar physical appearance to Sinkfield; and Hill's testimony that Brown told the prosecutor that he could not testify against Sinkfield because he was not the perpetrator.

While this evidence was certainly corroborative, its credibility was very much in dispute. As the Court of Appeals of Ohio noted, "After reviewing the evidence in this case, we find that there was some testimony that was so incredible that it defied belief. Unfortunately, much of the incredible testimony was elicited from defense witnesses." Sinkfield acknowledged the credibility problems of some of his supporting testimony. In *Chambers*, the corroborating evidence consisted of a sworn confession that was later repudiated, eyewitness testimony, testimony that McDonald was seen with a gun following the shooting, and testimony that McDonald owned a gun. However, there is no mention of any credibility issues surrounding the corroborating evidence similar to those in this case.

Second, and most significantly, although *Chambers* involved the confession of a party not on trial, that confession did not implicate a third party. Under AEDPA, Sinkfield must point to an unreasonable application of clearly established federal law, as determined by Supreme Court decisions. *See Williams*, 529 U.S. at 412. However, as the Court noted in *Montana v. Egelhoff*, 518 U.S. 37 (1996), the holding in *Chambers* is extremely limited:

> *Chambers* was an exercise in highly case-specific error correction. . . . Thus, the holding of *Chambers* – if one can be discerned from such a fact-intensive case – is certainly not that a defendant is denied "a fair opportunity to defend against the State's accusations" whenever "critical evidence" favorable to him is excluded, but rather that erroneous evidentiary rulings can, in combination, rise to the level of a due process violation.

*Id.* at 52-53 (citations omitted).

Thus, *Chambers* does not compel the conclusion that exclusion of the testimony of Garrett and Gray resulted in the denial of Sinkfield's due process and compulsory process rights. If any analogy to *Chambers* may be made, it is that the exclusion of the testimony was not a mechanical and unyielding application of the rules of evidence. Instead, the state court carefully evaluated the factors outlined in *Chambers* and concluded that the requisite indicia of reliability were not present. Its application of *Chambers* was neither contrary to, nor an unreasonable application of, clearly established federal law.

AFFIRMED.