NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0906n.06

No. 12-3539

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 22, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| RANDY L. DILLON, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| WARDEN, ROSS CORRECTIONAL | ) | THE SOUTHERN DISTRICT OF |
| INSTITUTION, | ) | OHIO |
| | ) | |
| Respondent-Appellee. | ) | |
| | | OPINION |

Before:  ROGERS, GRIFFIN, and DONALD, Circuit Judges.

**BERNICE B. DONALD, Circuit Judge**.  Petitioner-Appellant Randy L. Dillon, an Ohio prisoner, appeals an order of the district court dismissing his petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Dillon's petition raised four grounds for relief: (1) he was denied due process because he was denied his constitutional right to present a defense; (2) he was denied effective assistance of counsel on appeal; (3) he was denied due process because his conviction rests on insufficient evidence; and (4) he was denied due process because the trial court failed to instruct the jury on lesser-included offenses.  The district court dismissed grounds two and four as procedurally defaulted and dismissed grounds one and three on their merits. Dillon appeals on grounds one and three.  Because there were no due process violations at trial, we **AFFIRM** the district court's order dismissing his petition.

I.

Sometime after 11:00 p.m. on March 12, 2007, Tonya Alexander put her fourteen-month-old daughter, M.B., to bed. Around 4:00 a.m. on March 13, 2007, Alexander awoke, went to check on M.B., found her missing, and immediately began looking for her. Unable to find M.B., Alexander had a neighbor call 911. Police soon responded and began searching. Once the police determined that M.B. was not in the house, they secured the scene to collect evidence. This investigation yielded a number of items, including various fingerprints, M.B.'s bedding, M.B.'s bottle, and castings of tire impressions from the back yard.

Around the time Alexander was putting M.B. to bed, Appellant Randy Dillon was drinking with his friend Mike Norris, his girlfriend Stella Lantz, and his mother Mary Bittner. When Norris ran out of cigarettes, Dillon offered to run out to Norris's van to get more, so Norris gave Dillon the keys to his van. Dillon left and did not return. Sometime after 5:00 a.m. on March 13, 2007, Dillon called Bittner to say that he was at a gas station and needed a ride.

Soon after Dillon made that call, a clerk from the gas station called the police because Dillon was bothering customers. When Sheriff's deputies arrived, they discovered that Dillon had an outstanding warrant, took him into custody on that warrant, and transported him to jail. As a part of the booking procedure, Dillon's clothes and personal effects were placed in storage. At that time, M.B. was still missing, and Dillon had not been connected to her disappearance.

Shortly before noon on March 13, 2007, Jeff Yingling found M.B. wrapped in a comforter next to Ohio State Route 146 in the Dillon Wildlife Area. M.B. was transported to a local hospital and ultimately to Nationwide Children's Hospital in Columbus, Ohio. Law enforcement secured the area where M.B. had been found, took pictures, and collected evidence.

Several days later, police learned of an abandoned van in a cornfield near where Yingling found M.B. This abandoned van turned out to be Norris's van that Dillon borrowed in the wee hours of the morning on March 13; Dillon then emerged as a suspect. A search of the van revealed a bed sheet with both the same brand and pattern as the sheet on which M.B. had been sleeping when she was kidnapped. Further investigation revealed that the comforter that was wrapped around M.B. when Yingling found her belonged to the Norris family and that Norris's wife had placed it in the van days before M.B.'s kidnapping.

The investigation ultimately established the following additional facts: Dillon had rented a garage from Alexander, M.B.'s mother, had been inside her house on several occasions, and knew M.B.; Dillon had been driving the van that was found approximately 500 feet from where M.B. was found; at around 4:00 a.m. on March 13, an eyewitness spotted someone with characteristics similar to Dillon's walking alongside the road leaving the area where M.B. was later found; and surveillance videos from two gas stations placed Dillon in the same area moving away from where M.B. was found and toward Zanesville, Ohio. The tire castings recovered from the backyard of M.B.'s house were consistent with the tires on Norris's van, and analysis of the clothes Dillon was wearing when

he was arrested on the unrelated warrant revealed mud consistent with mud samples taken from where the van was recovered.

DNA analysis revealed Dillon's DNA on the clothing that M.B. was wearing when she was found and M.B.'s DNA on the hip area of Dillon's shirt. Medical evidence established that M.B. suffered an injury inside her labia majora consistent with sexual assault. Tests revealed amylase, a digestive enzyme heavily present in saliva, on M.B.'s diaper, but no semen was found on any of the items submitted for forensic analysis.

II.

In April 2007, a Muskingum County, Ohio grand jury indicted Dillon on charges of burglary, kidnapping, and attempted murder, as well as unlawful sexual conduct (rape) and unlawful sexual contact (gross sexual imposition) with a minor. Dillon's first trial began on January 10, 2008 but ended in a mistrial. On February 8, 2008, Dillon filed a notice of alibi in the Muskingum County Clerk's Office claiming that two unknown assailants had abducted, beaten, and robbed him on the night of M.B.'s disappearance.

Over Dillon's Double Jeopardy objections, his second trial commenced on April 7, 2008. *See* U.S. Const. amend. V. Dillon did not testify. Nonetheless, as a part of his alibi defense, Dillon tried to introduce statements indicating that he had been the victim of a kidnapping and robbery at the time of M.B.'s kidnapping through the testimony of his mother, Mary Bittner, and a Zanesville

police officer, Terry Sheets. The trial court excluded this testimony as hearsay. Because this exclusion serves as the basis for one of Dillon's claims on appeal, it merits further exposition.

During Bittner's direct examination, Dillon's attorney asked "as a result of that phone conversation [the call that Dillon placed from the gas station in the early morning hours on March 13, 2007], what did you do next?" The prosecution objected, and when the court sustained this objection, Dillon's attorney clarified that he was not asking Bittner what Dillon had said. Bittner then described her actions after the call, but, in so doing, she explained that she had asked her brother to take her to the gas station "because Randy [Dillon] had been robbed." The prosecutor made another objection, which the trial court again sustained. The trial transcript reflects that shortly thereafter there was a long discussion about Officer Sheets's testimony in which Dillon's attorney made an offer of proof that Officer Sheets would testify that he investigated Dillon's claim about being kidnapped and robbed. The prosecution objected on grounds that all of the witness's knowledge came from Dillon's statements, so his answers would be inadmissible hearsay. The trial judge agreed but did permit questions to Sheets about Dillon's physical appearance and whether he received any medical treatment.

At the conclusion of the second trial, the jury found Dillon guilty of all charges except gross sexual imposition. The trial judge sentenced Dillon to life in prison without the possibility of parole on the rape charge, plus consecutive sentences of ten years on the kidnapping charge, ten years on the attempted murder charge, and eight years on the burglary charge.

Dillon timely appealed to the Ohio Court of Appeals for the Fifth Appellate District. His appeal alleged six errors, including claims that the trial court committed reversible error by excluding evidence supporting his alibi defense and violated his due process rights by convicting and sentencing him without sufficient evidence. The court of appeals affirmed Dillon's conviction and sentence. *State v. Dillon*, 2009 WL 1835950 (Ohio Ct. App. June 24, 2009). The Ohio Supreme Court denied Dillon's request for review. *State v. Dillon*, 123 Ohio St. 3d 1495 (Ohio 2009).

While Dillon's appeal to the Ohio Supreme Court was pending, he filed a motion to reopen his appeal under Ohio Appellate Rule 26(B), advancing two additional assignments of error relating to the trial court's exclusion of alibi evidence. The court of appeals denied this motion as untimely.

Then, on April 8, 2010, Dillon filed a motion to vacate his conviction in the trial court, arguing that the court lacked subject-matter jurisdiction to hear his case, which the court denied. Dillon appealed this order to the Fifth Appellate District Court of Appeals, where the appeal was dismissed.

On July 6, 2010, Dillon filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Ohio. This petition raised four claims: (1) "Petitioner was denied due process when he was denied his constitutional right to present a defense"; (2) "Petitioner was denied the effective assistance of counsel on appeal"; (3) "Petitioner was denied due process of law when there was insufficient evidence to convict him"; and (4) "Petitioner was denied due

process when the trial court failed to instruct the jury on a lesser included offense." The district court referred the matter to a Magistrate Judge for a Report and Recommendation.

The Magistrate Judge issued a Report and Recommendation regarding Dillon's petition on November 10, 2011. The Magistrate Judge recommended dismissing Dillon's second ground for relief, ineffective assistance of appellate counsel, and his fourth ground, failure to instruct the jury on a lesser included offense, as procedurally defaulted.

The Magistrate Judge then turned to the merits of Dillon's claim that the trial court's refusal to allow him to introduce certain testimony from Bittner and Sheets regarding his alibi defense violated due process. Though the state appellate court characterized this claim as whether the trial court's evidentiary ruling constituted an abuse of discretion, the Magistrate Judge found that Dillon raised a cognizable due process claim regarding his ability to present a defense. The Magistrate Judge reasoned, however, that the trial judge properly excluded this testimony because it was hearsay and did not fall within any exceptions. The Magistrate Judge concluded that excluding these statements was neither arbitrary nor unfair and thus did not violate Dillon's due process right to present a defense.

The Magistrate Judge found that Dillon's only remaining claim—that the evidence presented against him was insufficient for any reasonable jury to convict him of either rape or attempted murder—was without merit. After a detailed assessment of the evidence presented at trial and the state appellate court's reasoning for each charge, the Magistrate Judge determined that the evidence

supported the jury's verdict and that the state court of appeals did not act unreasonably in holding

that the evidence supported the verdict.  He therefore recommended dismissing Dillon's claims.

Over Dillon's objection, the District Court adopted the magistrate's Report and

Recommendation  and dismissed Dillon's habeas petition.  On Dillon's motion, the district court

issued a certificate of appealability as to Dillon's first and third grounds for relief.  This appeal

ensued.

III.

We review the district court's legal conclusions de novo and its findings of fact for clear

error.  *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).  Because Dillon filed his habeas

petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), AEPDA applies to this case.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  Under

AEDPA,

> federal courts may not grant habeas relief on any claim that was adjudicated on the
> merits in the state courts unless the adjudication resulted in a decision that: (1) was
> contrary to, or involved an unreasonable application of, clearly established federal
> law as determined by the Supreme Court; or (2) was based on an unreasonable
> determination of the facts in light of the evidence presented to the state courts.

*Goodell v. Williams*, 643 F.3d 490, 495 (6th Cir. 2011) (citing 28 U.S.C. § 2254(d)).

A state court adjudication is "contrary to" federal law if it reaches a conclusion of law

opposite to that reached by the Supreme Court or if the state court decides a case with materially

indistinguishable facts differently than the Supreme Court.  *Goodell v. Williams*, 643 F.3d at 495

(citing *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). "Clearly established federal law" refers to Supreme Court holdings at the time of the state court's decision. *Williams v. Taylor*, 529 U.S. at 410-11.

Under § 2254's "unreasonable application" clause, a federal court may grant habeas relief if the state court identified the correct legal principle but then applied it to the facts of the petitioner's case in a way that is objectively unreasonable. *Goodell v. Williams*, 643 F.3d at 495. "Even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85. A habeas court reviewing a petition regarding claims adjudicated on the merits in state court is limited to the record that was before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). "[A] determination of a factual issue made by a state court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). In sum, "[i]f this standard is difficult to meet, that is because it was meant to be . . . . [h]abeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

A.

Dillon argues that the trial court's refusal to allow him to introduce testimony about his alibi defense violated his rights under the Due Process Clause of the Fourteenth Amendment. U.S. Const. amend. XIV § 1. Specifically, Dillon asserts that his statements to Sheets and Bittner were admissible under the excited utterance hearsay exception; Dillon made this same argument on direct appeal. The state appellate court found that the trial court properly excluded this testimony and held that "[t]he statements constituted inadmissible hearsay that would have effectively allowed appellant to testify without being under oath, without cross-examination, and without direct scrutiny by the jury." *State v. Dillon*, 2009 WL 1835950, at \*6 (Ohio Ct. App. June 24, 2009).

Because this issue was without question adjudicated on the merits in state court, 28 U.S.C. § 2254(d)'s deferential standard of review applies. *Goodell v. Williams*, 643 F.3d at 495. To prevail, Dillon must demonstrate that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. at 786-87. Errors in application of state law, especially evidentiary rulings, are usually not to be questioned in federal habeas proceedings, but "where the violation of a state's evidentiary rule has resulted in the denial of fundamental fairness, thereby violating due process, federal habeas corpus relief will be granted." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *accord Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) ("Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of

our people as to be ranked as fundamental." (internal quotation marks omitted)). "The Supreme

Court has defined very narrowly the category of infractions that violates fundamental fairness." *Bey*

*v. Bagley*, 500 F.3d 514, 522 (6th Cir. 2007) (quoting *Dowling v. United States*, 493 U.S. 342, 352

(1990)) (internal quotation marks omitted). Dillon's trial did not violate any principles of

fundamental fairness.

Under the Ohio Rules of Evidence, an excited utterance requires (1) that there be a startling

event, (2) that the statement be made before there is an opportunity to contrive or misrepresent, and

(3) that the statement be made while the person is under the stress of the excitement caused by the

event. *United States v. Beverly*, 369 F.3d 516, 539-40 (6th Cir. 2004); *see also United States v.*

*Winters*, 33 F.3d 720, 722-23 (6th Cir. 1994) ("The 'excited utterance' rule requires that the speaker

be under the sway of a startling event and that the statement be made before there is an opportunity

to contrive or misrepresent."). As the district court found, Dillon's statements to both his mother

and to Sheets fail to meet the requirements of the excited utterance exception. Assuming for the

sake of argument that Dillon was abducted and robbed and that the robbery was a sufficiently

startling event, he nevertheless had ample opportunity to contrive or misrepresent in the hours

between the alleged robbery and either calling his mother or being interviewed by Sheets.

Accordingly, Dillon's statements do not fit within the exited utterance exception to the hearsay rule.

Regarding his statements to Sheets, Dillon also appears to argue that they are admissible

under the prior consistent statement hearsay exclusion. *See* Appellant's Br. at 17 ("The facts do not

support the contention that [Dillon] invented a story. The facts also show independent corroboration

of his story."). Under Ohio Evidence Rule 801(d)(1)(B), which is identical to the equivalent section in the Federal Rules of Evidence, Dillon's prior consistent statements concerning his robbery alibi would not have been hearsay only if the declarant—Dillon—had testified. Ohio Evid. R. 801(d)(1)(B); *see also* Fed. R. Evid. 801(d)(1)(B). Because Dillon did not testify, the testimony from Sheets remained inadmissible. *See United States v. Trujillo*, 376 F.3d 593, 611 (6th Cir. 2004) (stating that both the declarant and the corroborating witness must testify and be subject to cross examination for the prior consistent statement exclusion to apply).

In *Chambers v. Mississippi*, 410 U.S. 284 (1973), the Supreme Court held that a state trial court had deprived a murder defendant of his constitutional right to present a defense when it strictly applied the Mississippi rules of evidence, which did not recognize a declaration-against-interest hearsay exception, to exclude evidence that another man had, on three occasions, admitted to committing the murder for which Chambers was later convicted. 410 U.S. at 292-93, 299. The trial court also prevented Chambers from cross-examining that same man regarding his renounced sworn confession to the murder. *Id.* at 291. The Supreme Court reasoned that the trial court excluded testimony that bore persuasive assurances of trustworthiness to make it "well within" the basic rationale of the hearsay exception for declarations against interest and that it was critical to the defense. *Id.* at 302. Unlike the excluded testimony in *Chambers,* the testimony excluded from Dillon's trial does not rise to the level of a constitutional violation.

Here, Dillon argues that the trial court deprived him of an opportunity to present his alibi defense—that he had been kidnaped, robbed, beaten, and then dropped by the side of the road on

the night of M.B.'s kidnaping.  Dillon argues that Sheets would have testified to Dillon's appearance, his manner of speech and dress, and his account of his whereabouts.  Appellant's Br. at 13, 17.  At trial, however, Sheets answered questions about Dillon's physical appearance and whether he received any medical treatment; the trial court only excluded evidence about Dillon's speech and Dillon's own account of his whereabouts.  Unlike the three confessions in *Chambers,* Sheets's testimony about Dillon's account of his whereabouts does not bear persuasive assurances of trustworthiness and is not highly relevant to Dillon's defense.  *See Chambers*, 410 U.S. at 302; *see also Sinkfield v. Brigano*, 487 F.3d 1013, 1018 (6th Cir. 2007); *Washington v. Renico*, 455 F.3d 722, 735 (6th Cir. 2006).

Dillon cannot demonstrate that the state appellate court's rejection of his due process right-to-present-a-defense claim represented an unreasonable application of federal law.  His first claim, therefore, lacks merit.

B.

Dillon also contends, as he did on direct appeal, that the evidence against him at trial did not prove he is guilty of rape or attempted murder beyond a reasonable doubt.  Appellant's Br. at 22. Dillon does not challenge his kidnapping or burglary convictions. Among a number of other smaller points, Dillon primarily argues: (1) the physical evidence is insufficient to tie him to M.B.'s abduction; (2) M.B.'s injuries do not sufficiently indicate rape; and (3) the DNA evidence against him is incomplete and inconclusive.  *Id.* at 22-29.

The Supreme Court held in *Jackson v. Virginia*, 443 U.S. 307 (1979), that evidence is sufficient to uphold a conviction when "after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 317. When applying *Jackson*, "federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (citations and internal quotation marks omitted). The court must assume that the jury weighed the evidence, resolved conflicts in testimony, and drew reasonable inferences. *Jackson*, 443 U.S. at 319. "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial . . . . This deferential standard does not permit . . . fine-grained factual parsing." *Coleman*, 132 S. Ct. at 2064 (citations and internal quotation marks omitted).

Because Dillon's appeal is in habeas, we apply a doubly deferential standard—deferring both to the jury's verdict under *Jackson* and to the state court's consideration of the jury's verdict under AEDPA. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). We first consider whether the evidence itself was sufficient to support the conviction; if so, our inquiry ends. *Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010). Should we find that the evidence was insufficient, we then consider whether the state court's conclusion that a rational trier of fact could find guilt beyond a reasonable doubt was objectively unreasonable. *Id.*

In Dillon's direct appeal, the Ohio Court of Appeals applied the Ohio Supreme Court's standard from *State v. Jenks*, which corresponds to the Supreme Court's *Jackson* standard. *State v. Dillon*, 2009 WL 1835950, at *8 (Ohio Ct. App. June 24, 2009); *see State v. Jenks*, 574 N.E.2d 492, 494 (Ohio 1991) (citing *Jackson*, 443 U.S. 307) ("The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."). Dillon asserts that the state appellate court applied this standard unreasonably when it concluded that the evidence sufficiently supported his convictions for rape and attempted murder.

1.

The relevant portion of Ohio law defines rape as

sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when . . . [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

Ohio Rev. Code § 2907.02(A)(1)(b). Dillon argues that the prosecution failed to prove that sexual conduct, an essential element of the crime, occurred.

"Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

Ohio Rev. Code § 2907.01(A).

At trial, several experts presented evidence that collectively established sexual contact beyond a reasonable doubt. The ER physician who examined M.B. noted a small tear in the left

vaginal mucosa in front of the hymeneal ring, a tiny amount of bleeding, and redness. The physician further testified that these injuries were "very specific to the entrance to the vaginal vault" and consistent with sexual assault. An expert in child sexual assault examinations corroborated these injuries and likewise testified that they were "very concerning for sexual abuse or sexual assault."

A forensic analyst from the Ohio Bureau of Criminal Identification and Investigation testified that he detected the presence of amylase, an enzyme that is fifty times more concentrated in saliva than in any other bodily fluid, on the baby's diaper. Further, Dillon's DNA was on the clothing M.B. was wearing when she was found, and M.B.'s DNA was on Dillon's shirt from the night in question. Lastly, the mud covering Dillon's clothes was consistent with the mud samples taken where the van was found. Taking all this evidence in the light most favorable to the prosecution, the Ohio Court of Appeals correctly concluded that a reasonable person could have found beyond a reasonable doubt that Dillon raped M.B. *See Dillon*, 2009 WL 1835950, at *9. To conclude otherwise would require the sort of fine-grained factual parsing *Jackson* cautions against. *Coleman*, 132 S. Ct. at 2064.

2.

Regarding his attempted murder conviction, Dillon contends that the evidence was constitutionally insufficient because the prosecution failed to prove that he took a substantial step toward the commission of attempted murder. The relevant portion of Ohio's murder statute simply states "[n]o person shall purposely cause the death of another . . ." Ohio Rev. Code § 2903.02(A).

Under Ohio's attempt statute, "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." Ohio Rev. Code § 2923.02(A). This statute also provides an affirmative defense if "the actor abandoned the actor's effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of the actor's criminal purpose." Ohio Rev. Code § 2923.02(D).

According to the Ohio Supreme Court, criminal attempt occurs where an offender commits an act constituting a substantial step toward the commission of an offense. *State v. Woods*, 357 N.E.2d 1059, 1061 (Ohio 1976), *vacated on other grounds sub nom., Woods v. Ohio*, 438 U.S. 910 (1978). Determining what constitutes a substantial step hinges on the facts and circumstances of each particular case. *State v. Group*, 781 N.E.2d 980, 996 (Ohio 2007). To qualify, the step must be strongly corroborative of the actor's criminal purpose but need not be the last proximate act before the commission of the offense. *Woods*, 357 N.E.2d at 1061.

Both in his objections to the magistrate's Report and Recommendation below and on appeal here, Dillon focuses on two things: (1) quibbling with individual portions of the state's evidence that suggest but do not indisputably confirm his guilt (e.g. that the tire castings from behind Alexander's house were consistent with—but not definitively made by—Norris's van or that the mud on his clothes was similar to but could not be conclusively matched with mud from the area where Yingling found M.B.) and (2) cataloguing supposedly missing evidence, particularly "contact" or "touch" DNA evidence at Alexander's house, that Dillon insists would have been recovered had he been the

perpetrator.  These arguments are off-base for two reasons.  First, Dillon's arguments neglect other evidence that indicates that he was, in fact, the perpetrator.  More importantly, accepting Dillon's arguments would require us to weigh the evidence against him, make credibility determinations, and draw inferences—actions that are decidedly in the purview of a jury, not a reviewing habeas court. *See, e.g.*, *Coleman*, 132 S. Ct. at 2064.

The Ohio Court of Appeals properly determined that a jury could have found beyond a reasonable doubt that Dillon attempted to murder M.B.  *See Dillon*, 2009 WL 1835950, at *11. Taking the evidence at trial in the light most favorable to the prosecution, a reasonable person could have concluded that Dillon dumped M.B., a fourteen-month-old child, in a wilderness area on a winter night and that this abandonment constituted a substantial step toward the commission of murder.  *See State ex rel. Squire v. Cleveland*, 82 N.E.2d 709, 729 (Ohio 1948).  We are therefore bound by our doubly deferential standard under *Jackson* and AEDPA to affirm the district court.

IV.

After filing both an initial appellate brief and a reply brief through counsel, on August 8, 2013, Dillon filed a pro se supplemental reply brief "without counsel in response to retained counsel failing to address specific issues with the Brief of Respondant-Appelles [sic]."  Appellant's Supp. Reply Br. at 1.  Because Dillon is represented by counsel, we are not compelled to address the claims in this supplemental reply brief.  *United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009); *see also, e.g.*, *United States v. Howton*, 260 Fed. App'x 813, 819 (6th Cir. 2008) ("We

decline to address [a defendant's pro se] arguments because [the defendant] was represented by counsel in this matter."); *United States v. Jenkins*, 229 Fed. App'x 362, 370 (6th Cir. 2005) ("[W]e do not ordinarily consider pro se claims brought by a defendant represented by counsel on appeal."). Nonetheless, even if we were to entertain these claims, they are without merit as Dillon's pro se supplemental reply brief merely revisits arguments he already made through counsel.

## VI.

For the foregoing reasons, we **AFFIRM** the district court's order dismissing Dillon's petition for a writ of habeas corpus.