**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0280n.06

No. 15-1815

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 23, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| CHARLES WASHPUN, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

Before: DAUGHTREY, MOORE, and GRIFFIN, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Charles Washpun appeals the district court's denial of his motion to reduce his sentence under 18 U.S.C. § 3582(c)(2). Because the district court refused to consider Washpun's letter objecting to his attorney's response to the Sentence Modification Report, we **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

On February 3, 1998, a jury found Washpun guilty of conspiring to possess and distribute both cocaine and cocaine base. R. 458 (Verdict at 1) (Page ID #1644). Following the verdict, the Probation Office submitted a presentence report ("PSR") which determined that, under § 2D1.1 of the U.S. Sentencing Guidelines ("U.S.S.G."), Washpun's sentencing range was 292–365 months. R. 1342 (PSR at 31) (Page ID #1329). The PSR expressed some concern that this range did not reflect the extent of Washpun's involvement, however. Washpun's base offense

level of 38—the highest base offense level under U.S.S.G. § 2D1.1(c)(1)—required that he be responsible for at least 1.5 kilograms of cocaine base. U.S. Sentencing Guidelines Manual § 2D1.1(c)(1) (U.S. Sentencing Comm'n 1997). The PSR estimated that Washpun was responsible for 66 kilograms of cocaine base—44 times the quantity required by U.S.S.G. § 2D1.1(c). R. 1342 (PSR at 18–19, 33) (Page ID #1316–17, 1331). To bring Washpun's sentence in line with his involvement in the conspiracy, the PSR recommended that the district court consider an upward departure. *Id.* at 33 (Page ID #1331). Washpun filed an objection to the PSR's calculation that he was responsible for 66 kilograms of cocaine base. R. 1342 (PSR's Summ. of Objections at 1) (Page ID #1332).[1]

The PSR's calculation was based on statements by Keylen Blackmon, one of the leaders of the conspiracy. R. 1342 (PSR at 18–19, 33) (Page ID #1316–17, 1331). At trial, Blackmon testified that from 1991 to 1993, he supplied 4.5 ounces of crack cocaine to Washpun two to three times a week. R. 1400-1 (Sentencing Hr'g at 3–4) (Page ID #1561–62); *see also* R. 1342 (PSR at 10–11) (Page ID #1308–09). Blackmon also testified that from 1995 to 1997 he provided crack cocaine to Darryl Ford—another member of the conspiracy. R. 1400-1 (Sentencing Hr'g at 4) (Page ID #1562); *see also* R. 1342 (PSR at 19) (Page ID #1317). Blackmon did not testify that he provided Washpun crack cocaine from 1995 to 1997, but he did say that (in Washpun's attorney's words) "if you were dealing with Mr. Ford, you were essentially dealing with Mr. Washpun." R. 1400-1 (Sentencing Hr'g at 4) (Page ID #1562).

---

[1]Washpun's original objections are not in our record.

At Washpun's sentencing hearing, his attorney raised two issues with the use of Blackmon's testimony to support an upward departure. First, Blackmon's testimony that he gave Washpun 4.5 ounces of crack cocaine two or three times a week for two years established only that Washpun was responsible for 26 kilograms of cocaine base, not 66 kilograms.[2] *Id.* at 3–4 (Page ID #1561–62). Second, Blackmon's testimony about Ford was just that—testimony about Ford. As Washpun's attorney emphasized, "There is no testimony in the record, other than that broad assertion that [Ford and Washpun] were one and the same person, that there actually was a delivery to Mr. Washpun." *Id.* at 4 (Page ID #1562). In the alternative, Washpun's attorney argued that even if the district court gave the government "the benefit of the doubt" and attributed half of the amount of crack cocaine that Blackmon said he supplied to Ford to Washpun, Blackmon's testimony would support only a finding that Washpun was responsible for 46 kilograms of cocaine base. *Id.* at 4–5 (Page ID #1562–63).

When the district court asked whether Washpun objected to the PSR's determination that he was responsible for at least 1.5 kilograms of cocaine base, Washpun's attorney said that he did not, remarking "we're obviously talking about over 1.5 kilograms." *Id.* at 6 (Page ID #1564). In response, the government clarified that it was not seeking an upward departure, obviating the need for the district court to determine exactly how much cocaine base Washpun

---

[2]Washpun's attorney assumed both the lower quantity and the lower frequency: 4.5 ounces x 2 = 9 ounces/week x 52 weeks = 468 ounces/year x 2 years = 936 ounces or 26 kilograms.

was responsible for. *Id.* at 6–7 (Page ID #1564–65). The district court sentenced Washpun to 300 months of imprisonment. *Id.* at 14 (Page ID #1572).

Sixteen years later, Washpun filed a pro se motion to reduce his prison sentence under Amendment 782 to the Sentencing Guidelines, which increased to 25.2 kilograms the quantity of cocaine base required to qualify for a base offense level of 38. R. 1330 (Mot. to Reduce Prison Sentence) (Page ID #1281); *see* U.S. Sentencing Guidelines Manual § 2D1.1(c)(1) (U.S. Sentencing Comm'n 2014). After two months, with no word from the district court, Washpun filed a second pro se motion to reduce his prison sentence, this time asking for a court-appointed attorney. R. 1335 (Mot. to Reduce Prison Sentence and Mot. to Appoint Counsel) (Page ID #1291); R. 1336 (Financial Aff.) (Page ID #1292). The district court directed the Probation Office to prepare a sentence modification report ("SMR") and appointed a public defender to represent Washpun. R. 1337 (Scheduling Order) (Page ID #1293).

The Probation Office's SMR determined that Washpun was not eligible for a reduction based on the PSR's calculation that Washpun was responsible for "at least 66 kilograms of cocaine base."[3] R. 1354 (SMR at 2) (Page ID #1408). The report did not mention Washpun's objection to the PSR's calculation, even though the objection was attached to the PSR. *Id.*; *see also* R. 1342 (PSR's Summ. of Objections at 1) (Page ID #1332). The SMR also listed Washpun

---

[3]The PSR had actually concluded that Washpun was responsible for "approximately 66 kilograms of crack cocaine," R. 1342 (PSR at 19) (Page ID #1317), not "at least 66 kilograms of cocaine base," R. 1354 (SMR at 2) (Page ID #1408).

as a "high security inmate" due to three infractions, including possession of a non-hazardous tool. R. 1354 (SMR at 3) (Page ID #1409).

Washpun's appointed counsel filed a response concluding that Washpun was ineligible for a reduction because his sentence was based on "a drug weight of 66 kilograms of cocaine base." R. 1361 (Def. Resp. to SMR at 2) (Page ID #1434). Washpun's appointed counsel did not address Washpun's objection to the PSR's calculation and, like the SMR, referred to Washpun as "a high-security inmate." *Id.* The government filed a response of its own, also concluding that Washpun was ineligible for a reduction. R. 1362 (Government Resp. to SMR at 3) (Page ID #1438). In a brief order, the district court stated that the SMR had determined Washpun was ineligible and that both Washpun's appointed counsel and the government agreed. R. 1363 (Order at 1–2) (Page ID #1440–41). The district court denied the motion without further analysis. *Id.* at 2 (Page ID #1441).

The next day, Washpun sent a letter to the district court protesting his appointed counsel's response to the SMR. R. 1366-1 (Letter at 1) (Page ID #1445). It is not clear from the letter whether Washpun had learned of the district court's ruling the day before. Washpun explained that his appointed counsel had not spoken with him or informed him that the Probation Office would be filing a report.[4] *Id.* He reiterated his objection to the PSR's calculation that he was responsible for 66 kilograms of cocaine base and closed with a correction: "[Appointed counsel] also stated that I am a high security inmate which is not true . . . I have been at a camp

---

[4]Washpun does not say whether he received a copy of the SMR.

for the last 5 year's [sic] . . . the infractions for a non-hazardous tool is tobacco . . . I smoke cigarettes my nerves bad and I am frustrated." *Id.* at 1–2 (Page ID #1445–46) (ellipses in original). The district court rejected Washpun's letter because it had already closed the case. R. 1366 (Order Rejecting Filing) (Page ID #1444). A few days later, Washpun's appointed counsel stipulated to a substitution of counsel. R. 1367 (Stipulation for Substitution of Counsel) (Page ID #1447). Washpun's new counsel filed a timely notice of appeal. R. 1368 (Notice of Appeal) (Page ID #1450).

## II. JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 18 U.S.C. § 3742(a). *United States v. Bowers*, 615 F.3d 715, 722 (6th Cir. 2010).

## III. ANALYSIS

In its scheduling order, the district court gave Washpun twenty-one days to respond to the SMR. R. 1337 (Scheduling Order at 2) (Page ID #1294). The Probation Office filed the SMR on June 2, 2015. R. 1354 (SMR) (Page ID #1407). The record does not indicate when Washpun received the report, but given that it had to be mailed to him in prison, it was likely not until a week or so later. Assuming Washpun received the SMR on June 9, 2015, his letter, dated June 24, 2014, was well within the twenty-one day period. *See* R. 1366-1 (Letter at 2) (Page ID #1446); *see also Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (describing the prison mailbox rule, a "relaxed filing standard" under which "a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court"). Even in the improbable

event that Washpun received the SMR on June 3, 2015, the day after it was filed, his letter was still within the twenty-one day period. Thus, by the terms of the district court's own scheduling order, Washpun's letter was timely. More critically, however, the letter raised serious questions about whether appointed counsel ever conferred with Washpun or even checked the SMR against the record. Given these concerns, the district court should have construed Washpun's letter as a separate response to the SMR and evaluated Washpun's substantive arguments as well as inquired into his claim that appointed counsel had not contacted him.

Although district courts have discretion to reject pro se filings by litigants represented by counsel, *United States v. Flowers*, 428 F. App'x 526, 530 (6th Cir. 2011), we have suggested that those filings deserve consideration when the arguments they raise could be meritorious, *see, e.g.*, *United States v. Gravley*, 587 F. App'x 899, 916 (6th Cir. 2014) (addressing pro se claims in addition to claims brought by counsel); *Miller v. United States*, 561 F. App'x 485, 489 (6th Cir. 2014) (accepting pro se filing by a litigant with counsel because it "appears to have merit"); *Dillon v. Warden, Ross Corr. Inst.*, 541 F. App'x 599, 609 (6th Cir. 2013) (finding no need to entertain pro se filing that "merely revisits arguments . . . already made through counsel"); *United States v. Jenkins*, 229 F. App'x 362, 370 (6th Cir. 2005) ("Although we do not ordinarily consider *pro se* claims brought by a defendant represented by counsel on appeal, we have, in an abundance of caution, reviewed them."). We are "left with the definite and firm conviction that the district court committed a clear error of judgment" in rejecting Washpun's letter. *See United States v. Copeland*, 321 F.3d 582, 596 (6th Cir. 2003) (internal quotation marks omitted).

Accordingly, we remand to the district court to determine whether the record supports a finding that Washpun possessed and distributed more than 25.2 kilograms of cocaine base. The comments made by Washpun's attorney at the initial sentencing cannot serve as a substitute for this determination, as they were made in a different context.

## IV.  CONCLUSION

For the reasons stated above, we **VACATE** the judgment of the district court and **REMAND** for further proceedings.

GRIFFIN, Circuit Judge, dissenting.

I respectfully dissent. I would affirm the judgment of the district court.

The majority holds that the district court committed error requiring reversal by rejecting defendant's pro se letter. Although it cites the deferential abuse-of-discretion standard of review, the substance of the majority's decision contravenes the law governing review of discretionary decisions by district court judges.

I.

Like the district court below, our court routinely declines to review issues raised in pro se filings when the party is represented by counsel. *See, e.g.*, *United States v. Harper*, 246 F.3d 520, 523 n.1 (6th Cir. 2001) (Moore, J.) ("[W]e decline to address [the defendant's] new issues" raised in a pro se letter "because they were not raised by [the defendant's] counsel."), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002); *see also United States v. Morrow*, 497 F. App'x 583, 587 (6th Cir. 2012); *United States v. Williams*, 641 F.3d 758, 770 (6th Cir. 2011); *United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009). So, too, do other district courts. *See, e.g.*, *United States v. Davis*, 373 F. Supp. 2d 788, 789 (E.D. Tenn. 2005); *United States v. Clark*, 250 F. Supp. 2d 856, 857 (S.D. Ohio 2002).

This practice follows from the principle that a defendant has a constitutional right to be represented by counsel *or* to represent himself during his criminal proceedings, but not both. *United States v. Mosely*, 810 F.2d 93, 97 (6th Cir. 1987) (citing *Faretta v. California*, 422 U.S. 806 (1975)); *see also* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead

and conduct their own cases personally *or* by counsel . . . ." (emphasis added)).  Because a litigant who is represented by counsel has no right to file a pro se submission, the decision to accept such filings is left to the sound discretion of the district court.  *See United States v. Flowers*, 428 F. App'x 526, 530 (6th Cir. 2011); *Mosley*, 810 F.2d at 97–98.

According to the majority, the district court abused its discretion because this court occasionally considers pro se arguments when they "could be meritorious."  Yet, it strains credulity to conclude that we have a "definite and firm conviction" that the district court committed a clear error merely because the rejected argument "could" be meritorious.  It is also at odds with our abuse of discretion standard of review—a mere difference of opinion is not enough.  *United States v. Ruiz*, 403 F. App'x 48, 54 (6th Cir. 2010); *see also Workman v. Bredesen*, 486 F.3d 896, 923–24 (6th Cir. 2007) (Cole, J., dissenting) ("[S]o long as the district court acted within its sound discretion, we may not reverse its judgment even if we would have decided the matter differently.").  That this court, sometimes, addresses pro se arguments does not mean a district court abuses its discretion when it acts differently.  *See United States v. Corp*, 668 F.3d 379, 393 (6th Cir. 2012)  ("The mere fact that a defendant cites other cases in which courts determined certain defendants to be deserving of different sentences does not demonstrate abuse of discretion in the instant case.").  In this respect, it is notable that nowhere does the majority identify a case in which this court reversed the judgment of the district court because it refused to accept a pro se filing, much less on the basis that the filing "could be meritorious." That absence is the chief indication that the majority's artificially low standard for reversing the

10

district court's exercise of discretion contravenes the deferential standard for reviewing discretionary decisions.

Even under the majority's own could-be-meritorious standard, defendant's pro se filing does not pass muster. Defendant's letter contended that his counsel "just agreed with the [presentence investigation] report and did not research . . . ." What defendant wanted his counsel to research is made clear by the rest of the letter: "[T]he 1.5 kilograms was <u>stipulated</u> to only for <u>sentencing purpose[s]</u> . . . the jury did not reach that[.]" (Emphasis and ellipsis in original.) The letter continued, in relevant part:

> For the probation office or the court to say I should be held responsible for 66 [kilograms] is unconstitutional. . . . It was not proven beyond a reasonable doubt[,] nor was this amount 66 [kilograms] nor the 1.5 [kilograms] submitted to the jury[.] The jurors are to be the fact finder not the judge . . . it's my constitutional right.

In other words, Washpun did not contest the factual basis for the PSIR's finding, only that it should have been found beyond a reasonable doubt by a jury. Because that claim would have failed, *see United States v. Roberge*, 565 F.3d 1005, 1012 (6th Cir. 2009) (observing that judges may still engage in fact-finding to calculate the appropriate Guidelines range), the district court did not abuse its discretion in rejecting defendant's letter, *see White v. Mitchell*, 431 F.3d 517, 533 (6th Cir. 2005) (holding no abuse of discretion in refusing to further consider issue at evidentiary hearing because it was "clearly meritless").

In sum, the district court was under no obligation to accept defendant's pro se filing because he was represented by counsel. The majority's rationale for holding that the district court abused its discretion in rejecting defendant's pro se letter lacks merit, legally and factually.

11

II.

Rather than error, this is a classic case of waiver—the presentation of a claim on appeal that a party intentionally relinquished below. Washpun claims that the district court erred in failing to calculate the amount of cocaine for which he was responsible. As the government correctly argues, defendant waived that claim by conceding that the PSIR attributed 66 kilograms of cocaine to defendant. Given his binding concession, the doctrine of waiver precludes defendant from seeking relief based on an argument he intentionally relinquished below. *United States v. Davis*, 751 F.3d 769, 777 (6th Cir. 2014).

The government observes that, in rare cases, this court will address waived issues "if the interests of justice demand relief, [and the party claiming error] meet[s] the requirements of plain-error review." *United States v. Lawrence*, 735 F.3d 385, 430–31 (6th Cir. 2013). Even assuming this were one of the rare cases, I would nonetheless hold that defendant cannot demonstrate he is eligible for a sentence reduction under the plain-error framework.

At the time of Washpun's original sentencing, 38 was the highest base offense level under the drug quantity table, and it was reserved for offenses that involved "1.5 KG or more of Cocaine Base." U.S.S.G. § 2D1.1(c)(1) (1997). When Washpun filed his motion to reduce his sentence, 38 was still the highest base offense level under the drug quantity table, but it applied to offenses involving "25.2 KG or more of Cocaine Base." *Id.* (2014). Thus, a sentence reduction is authorized under 18 U.S.C. § 3582(c)(2) and Amendment 782 only if defendant is responsible for less than 25.2 kilograms of cocaine.

The PSIR submitted before defendant's original sentencing gave a "very conservative" estimate of 66 kilograms of cocaine for which defendant was responsible during the time frame of the conspiracy (1990 to 1997). At his original sentencing, Washpun's counsel addressed the PSIR's estimate, stating, "[Washpun] does not agree with the *computation* of the amount of cocaine that he allegedly dealt with." (Emphasis added.) Counsel elaborated:

> Very briefly, I think that's contained in two specific sections as supported by the government's sentencing memorandum. The one instance relates to the time frame of 1991 through 1993 where they indicate that Mr. Blackmon testified that he delivered four and a half ounces of crack cocaine two to three times a week on credit. I would only indicate on the record that that total would be 26 kilos.

> The other one, the other factual instance, which is the one I'd like to direct my remarks to, is the period from, and this is a broad statement of time, from 1995 and 1997. And that testimony essentially states that for that broad period of time, without any specifics, 9 to 18 ounces of crack cocaine was delivered to Darryl Ford, not to Mr. Charles Washpun.

Counsel went on to discuss the factual basis for the amount attributed to him between 1995 and 1997. However, counsel did not contest the factual basis for the period between 1991 and 1993, and argued that the computation of the amount for that period totaled only 26 kilograms. As counsel said, "[W]e're really talking about 26 kilos instead of 66."

According to defendant, at the time of his original sentencing, then, he was responsible for 26 kilograms of cocaine. "If the record indicates that there was a finding of a specific quantity of drugs, either because the original sentencing judge made a specific finding *or because the defendant admitted to a specific quantity*, then the modification court must use that quantity and determine whether applying the retroactive amendment has the effect of lowering the Guideline range[.]" *United States v. Valentine*, 694 F.3d 665, 670 (6th Cir. 2012). Using the

13

26-kilogram amount defense counsel conceded was attributable to defendant between 1991 and 1993, it would not be error, let alone plain error, for the district court to conclude that defendant is ineligible for a sentence reduction under Amendment 782.

The majority opinion would apparently take a different view, given its contention that "[t]he comments made by Washpun's attorney at sentencing cannot serve as a substitute for this determination, as they were made in a different context." Yet, this is just another way of saying, had counsel known the threshold amount would have increased to 25.2 kilograms, he would not have accepted the 26-kilogram computation. The same could be said for any factual concession that later turns out to be dispositive. Defendant, through counsel, made a factual concession. It was a strategic choice. The PSIR suggested an upward departure, and counsel hoped to keep the departure as small as possible. To that end, Washpun's trial counsel objected to the PSIR's calculation of the total amount of cocaine for which defendant was responsible. He focused on the amount attributed to Washpun during 1995 and 1997. In so doing, he expressly conceded that defendant was responsible for 26 kilograms between 1991 and 1993. Given that concession, defendant cannot demonstrate plain error in finding him ineligible for a sentence reduction under Amendment 782.

### III.

Intermediate appellate courts play an important, but limited, role in our judicial system. When we decide issues not raised by the parties—and worse, reverse the judgment of another tribunal on that basis—it erodes confidence in a predictable appellate process, for both the

14

parties and the lower court. Whether the district court abused its discretion in rejecting defendant's pro se submission is not an issue before us; even if it were, the standard the majority applies for assessing the district court's exercise of discretion is not correct; and even if it were, defendant's pro se submission does not satisfy that standard.

The question presented is whether the district court erred in finding defendant ineligible for a sentence reduction under Amendment 782. Because defendant intentionally relinquished any claim for a sentence reduction in the district court, he is foreclosed from seeking relief on that basis in this court. Even assuming waiver's narrow relief-valve applies in this case, I nonetheless would hold that, given his concession at sentencing to being responsible for 26 kilograms of cocaine, defendant cannot demonstrate plain error.

For these reasons, I respectfully dissent and would affirm.